383 S.E.2d 47

**STATE of West Virginia**

v.

**Terry Walker MULLINS.**

**STATE of West Virginia**

v.

**Michael F. RODAS.**

Nos. 18630, 18636.

Supreme Court of Appeals of West Virginia.

May 19, 1989.

Rehearing Denied July 20, 1989.

Franklin D. Cleckley, Morgantown, for Terry Walker Mullins.

Robert E. Blair, Welch, for Michael F. Rodas.

Richard M. Riffe, Asst. Atty. Gen., Charleston, for appellee.

McHUGH, Justice:

These cases are before the Court upon the appeals of Terry Walker Mullins and Michael F. Rodas. The appellants were convicted of first degree arson in the Circuit Court of McDowell County. We have reviewed the petitions for appeal, all matters of record, and briefs of the parties. We are of the opinion that the convictions should be affirmed.

I

On the night of December 9, 1986, and early morning of December 10, 1986, a two-story building, located in Bradshaw and owned by Will Harvey Mullins, was destroyed by fire. Will Harvey Mullins, the father of the appellant Mullins, was hospitalized and critically ill at the time of the fire. He died four days later.

The first floor of the building was leased to and occupied by the Sound Factory, an electronic equipment business. Four apartment units were located on the second floor of the building. Three of the units were vacant and unoccupied at the time of the burning. The other unit, according to testimony at trial, was lived in by the sister of the appellant Mullins.

During trial, the State's witnesses included Warren Henderson, who testified that on the night of December 9, 1986, he had followed a blue pick-up truck with a white camper top into Bradshaw. Because it was being driven erratically, he remembered the truck's license plate number. Henderson testified that he did not know who was in the truck.

The State's witnesses also included Benny Matney, who testified that he was driving by the Sound Factory at the time of the explosion. Matney testified that he saw a blue truck with a white top parked on the side of the road by the Sound Factory, and a man getting into the truck right before the explosion. The truck pulled away immediately upon the explosion. Matney could not identify the man getting into the truck or the driver.

The front door to the building was the only conventional way of entry, and it was padlocked at the time firefighters and the Sound Factory manager arrived at the scene. Several employees of the Sound Factory had keys to the padlock, but there was no evidence that either of the appellants possessed a key. There was evidence that a hole in the roof in the rear of the building was a means of gaining access to the interior.

An assistant chief with the Bradshaw Fire Department and an assistant state fire marshall testified that they believed the fire was of an incendiary nature, caused by a flammable liquid.

The appellants contend that they were elsewhere when the burning occurred. The appellant Rodas was employed by the appellant Mullins as a maintenance man at a trailer park. He was also employed as a bartender at the Red Cellar Lounge, owned

by Mullins. The appellants closed the bar at 10:00 p.m., earlier than usual, on the night of December 9, 1986, they maintain, so that they could go to inspect a bar in War that Mullins had considered purchasing. Rodas was intoxicated when they left the Red Cellar Lounge.

The appellants testified that they drove to a bar in Yukon, then on to War and English. They drove through Bradshaw around 11:00 p.m., and reached Iaeger around 11:30 p.m., where they were stopped by Iaeger city police, and taken to city hall where they were detained and questioned. They were not formally told why they were being questioned.

The truck was searched. Garbage cans and a .38 caliber Smith & Wesson were found in the truck. The state trooper assigned to the investigation testified that the rear compartment of the truck, where the garbage cans were found, "reeked with the smell of kerosene."

## II

The appellant Mullins contends that the indictment in this case was insufficient to sustain a conviction of first degree arson.[1] The indictments alleged that the appellants:

> feloniously, maliciously, willfully and unlawfully set fire to and burn a certain building and storehouse situated in Bradshaw, McDowell County, West Virginia, then owned by Will Harvey Mullins and then possessed and occupied by Bobbie Jean Hughes, an individual, trading and doing business under the name of The Sound Factory, and who owned the contents therein which were also burned and destroyed, in violation of West Virginia Code 61–3–1, as amended[.]

*W. Va. Code*, 61–3–1 [1935], the State's first degree arson statute, provides:

> Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, whether occupied, unoccupied or vacant,

or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, whether the property of himself or of another, shall be guilty of arson in the first degree, and upon conviction thereof, be sentenced to the penitentiary for not less than two nor more than twenty years.

Fundamentally, the appellant Mullins maintains that the language of the indictment sets forth the elements of second degree arson, not first degree arson, because it does not refer to the burning of a dwelling house. The State's second degree arson statute is *W. Va. Code*, 61–3–2 [1935], and it provides:

> Any person who wilfully and maliciously sets fire to or burns or causes to be burned, or who aids, counsels or procures the burning of any building or structure of any class or character, whether the property of himself or of another, not included or prescribed in the preceding section, shall be guilty of arson in the second degree, and upon conviction thereof, be sentenced to the penitentiary for not less than one nor more than ten years.

■ Therefore, appellant Mullins argues that the indictment was insufficient to support a conviction of *first degree* arson. In so contending, the appellant claims that although the indictment in this case generally followed the statutory language, it is not sufficient because the language in the indictment did not also include an essential element of the offense, specifically, reference to a dwelling house. We do not agree with this contention. The appellant Mullins' contention would indicate that there is but one method of drafting an effective indictment written in statutory language to sustain a conviction. This method would require the indictment to be worded in terms that strictly spell out statutory requirements and any deviation therefrom would render the indictment defective. However, we have never required the in-

---

1. The sufficiency of the indictment was not a primary issue before trial. Mullins' appellate counsel, who was not his trial counsel, raised the issue for the first time during oral argu-

ment. It was subsequently briefed by counsel for Mullins and the State. The appellant Rodas did not raise this issue.

dictment to be worded in such narrow terms. Rather, our holdings have required the indictment to *substantially* follow the statute's language and fully inform the defendant of the prosecution's charge.

This Court has consistently held that "[a]n indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based." Syl. pt. 3, *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983). *Accord*, syl. pt. 1, *State v. Fairchild*, 171 W.Va. 137, 298 S.E.2d 110 (1982); *see also State v. Eden*, 163 W.Va. 370, 387, 256 S.E.2d 868, 878 (1979); syl. pt. 3, *State v. Slie*, 158 W.Va. 672, 213 S.E.2d 109 (1975); syl. pt. 3, *Pyles v. Boles*, 148 W.Va. 465, 135 S.E.2d 692 (1964); *State v. Younger*, 130 W.Va. 236, 239, 43 S.E.2d 52, 53 (1947).

In the case now before us, the indictment referred to *W.Va.Code*, 61–3–1 [1935], which is *first degree* arson. The language of the indictment, coupled with the statutory reference to *W.Va.Code*, 61–3–1 [1935], was sufficient to apprise the appellant Mullins of the first degree arson charge so that he could prepare for trial.[2] Syl. pt. 2, *State v. Harrison*, 130 W.Va. 246, 43 S.E.2d 214 (1947); syl., *State v. Wohlmouth*, 78 W.Va. 404, 89 S.E. 7 (1916). Therefore, the indictment in this case was sufficient to permit a trial and conviction for first degree arson.

Accordingly, we hold that the indictment in this case, for a charge of first degree arson, is sufficient to sustain the conviction, because in charging the offense, it made reference to *W.Va.Code*, 61–3–1, as amended, and fully informed the defendant of the particular offense, first degree arson, for which he was charged.

III

The appellants, Mullins and Rodas, contend that the evidence presented at trial failed to establish that the building that burned was a "dwelling house" as contemplated by *W.Va.Code*, 61–3–1 [1935], and therefore the State has failed to establish first degree arson.

The evidence at trial indicated that there were four apartment units located on the second floor of the building that burned. Three of the apartment units were vacant and unoccupied at the time of the burning, but the other unit was lived in by the sister of the appellant Mullins.

In *Nelson v. Merritt*, 176 W.Va. 485, 345 S.E.2d 785 (1985), we stated: "In interpreting a statute, each word of the statute should be given some effect, and if undefined will be given its common, ordinary, accepted meaning." *Id.* 176 W.Va. at 488, 345 S.E.2d at 787–88. This Court has never confronted the question of the common, ordinary meaning of "dwelling house" in the context of a first degree arson charge. However, this Court has discussed this meaning in the context of burglary. "Many cases discuss whether the several buildings therein described were, under the circumstances, dwelling houses within the meaning of the law of burglary. A building need not be regularly occupied as a place of habitation to render it a dwelling." *State v. Bair*, 112 W.Va. 655, 656, 166 S.E. 369, 370 (1932).

Other states have required the state to prove, as an element of arson, that the type of property burned conformed to the degree of arson for which the defendant was charged. *Simmons v. State*, 234 Ind. 489, 498, 129 N.E.2d 121, 125 (1955); *State v. Cuthrell*, 235 N.C. 173, 174, 69 S.E.2d 233, 234 (1952).

"Dwelling" has been defined as:

The house or other structure in which a person or persons live; a residence;

---

2. The evidence presented at trial proved that the burned building was a dwelling. The appellant Mullins' mother testified that her daughter had lived in one of the apartment units. The record in this case confirms that the appellant Mullins was not surprised by the first degree arson charge, but was fully aware of it before trial.

For example, the search warrant for the destroyed premises, as well as its supporting affidavit, stated that the upper level of the building was intended for use as an apartment. Even testimony before the grand jury indicated that the brother of the appellant Mullins lived in one of the apartments for a time.

abode; habitation; the apartment or building, or group of buildings, occupied by a family as a place of residence. Structure used as place of habitation.

In conveyancing, includes all buildings attached to or connected with the house. *In criminal law* (*e.g.* burglary), means a building or portion thereof, a tent, a vehicle or other enclosed space which is used or *intended for use as a human habitation*, home or residence.

*Black's Law Dictionary* 454 (5th ed. 1979) (emphasis supplied).

■ In this case, it was proved that a part of the burned building was a dwelling. The evidence clearly indicated that the second floor was intended for habitation. *See supra* note 2. Arson is an offense against the security of the habitation, alluding to possession, not property. *Daniels v. Commonwealth*, 172 Va. 583, 588, 1 S.E.2d 333, 336 (1939). *See also* 2A M.J. *Arson* § 1 (1980). Because a part of the building burned in this case was intended for habitation, and therefore was a dwelling, the security of the habitation was affected.[3]

The Supreme Court of North Carolina recently held that an apartment was a "dwelling house" within the contemplation of an arson statute.

> Though defendant set her own apartment afire, the 'dwelling house of another' element of common law arson is satisfied here. The record reflects that the building in which defendant resided was an apartment house consisting of several apartments in a single building. If a dweller in an apartment house burns the building, he or she is guilty of arson even though the fire is confined to the rooms occupied by the wrongdoer, because the building is the dwelling house of the other tenants.

*State v. Allen*, 322 N.C. 176, 196, 367 S.E.2d 626, 637 (1988). *See also Smith v. State*, 256 Ind. 546, 549–50, 270 N.E.2d 743, 744 (1971). The crime of arson in this State is graded by degrees. The most seri-

ous offense, first degree arson, is the burning of a dwelling house. *W. Va. Code*, 61–3–1 [1935]. Second degree arson involves burning a building other than a dwelling house. *W. Va. Code*, 61–3–2 [1935]. Third degree arson is burning the personal property of another with a value of at least fifty dollars. *W. Va. Code*, 61–3–3 [1957]. An attempt to commit arson in the first, second, or third degree constitutes fourth degree arson. *W. Va. Code*, 61–3–4 [1935].

We conclude that a building which contains an apartment, intended for habitation, whether occupied, unoccupied or vacant, is a "dwelling house" for purposes of *W. Va. Code*, 61–3–1, as amended.

## IV

The appellants contend that the evidence offered at trial was insufficient, as a matter of law, to support their convictions of first degree arson.

In *State v. Yates*, 169 W.Va. 453, 454–55, 288 S.E.2d 522, 523 (1982), this Court summarized the two prongs of sustaining a conviction of arson when the evidence is circumstantial. First, "proof of the *corpus delicti* of arson requires that the fire was of an incendiary origin." *State v. Jones*, 161 W.Va. 55, 66, 239 S.E.2d 763, 769 (1977). Secondly, "the State must ... connect the defendant with the actual commission of the crime." *State v. Clay*, 135 W.Va. 618, 625, 64 S.E.2d 117, 121 (1951).

■ In this case, there was evidence that the fire was of an incendiary origin. An assistant chief with the Bradshaw Fire Department and an assistant state fire marshall testified that they believed the fire was of an incendiary nature, caused by a flammable liquid.

In syllabus point 2 of *State v. Dobbs*, 163 W.Va. 630, 259 S.E.2d 829 (1979), this Court held that:

> Circumstantial evidence will not support a guilty verdict, unless the fact of guilt is proved to the exclusion of every

---

**3.** The fact that three of the four apartment units were unoccupied does nothing to lessen the degree of the arson charge. Even if the fourth unit was unoccupied, this too, would have no

bearing, because a "dwelling house," for purposes of *W. Va. Code*, 61–3–1 [1935], may be "occupied, unoccupied or vacant[.]"

reasonable hypothesis of innocence; and circumstances which create only a suspicion of guilt but do not prove the actual commission of the crime charged, are not sufficient to sustain a conviction.

In this case, however, there was circumstantial evidence sufficient to establish a connection between the appellants and the actual commission of the crime. Evidence was introduced at trial that Will Harvey Mullins, owner of the building and father of the appellant Mullins, had a $209,000 insurance policy on the building. At the time of the fire, Will Harvey Mullins was hospitalized and critically ill. He died four days later. Two witnesses saw a pick-up truck matching that of the appellant Mullins. One of the witnesses saw it drive away at the time and place of the explosion causing the fire. Another witness saw it being driven erratically through Bradshaw, and remembered the truck's license plate number. The license plate number matched the truck being driven by the appellant when it was pulled over by city police in Iaeger. The truck smelled of kerosene when it was searched. Obviously, that evidence supports a connection between the appellants and the actual commission of the crime.

■ Accordingly, we restate the principle that to sustain a conviction of arson, when the evidence offered at trial is circumstantial, the evidence must show that the fire was of an incendiary origin and the defendant must be connected with the actual commission of the crime.

In the case now before us, both prongs of this principle have been satisfied. Therefore, the evidence offered at trial was sufficient, as a matter of law, to support the appellants' convictions of first degree arson.

V

The appellants further contend that the circuit court committed reversible error by failing to give an instruction on second degree arson, a lesser included offense under the indictment.

Trial counsel for the appellants did not tender an instruction to the circuit court on the lesser included offense. However, in cases where the defendant is entitled to a lesser included offense instruction, the duty to give such an instruction is on the trial court. Syl. pt. 2, *State v. Dozier,* 163 W.Va. 192, 255 S.E.2d 552 (1979). *See State v. Dellinger,* 178 W.Va. 265, 268, 358 S.E.2d 826, 829 (1987).

■ The appellants in this case, however, were not entitled to a lesser included offense instruction, and the circuit court had no duty to give such an instruction even though defense counsel failed to offer one. We have held that "[w]here there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction." Syl. pt. 2, *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982). *See State v. Thompson,* 176 W.Va. 300, 308, 342 S.E.2d 268, 276 (1986); *State v. Ruddle,* 170 W.Va. 669, 671, 295 S.E.2d 909, 911 (1982). *See also* syl. pt. 1, *State v. Jones,* 174 W.Va. 700, 329 S.E.2d 65 (1985). As stated in section III of this opinion, the evidence in this case established first degree arson. There is no insufficiency on the necessary elements of the greater offense, first degree arson in this case, which are different from those of the lesser included offense, second degree arson. There was no evidence presented at trial that sought to prove that the burned building was not a dwelling. Moreover, as stated previously in this opinion, the evidence overwhelmingly supported the first degree arson conviction because of the apartment units located within the burned building.

Thus, there is no evidentiary dispute on the elements of the greater or lesser included offense. The appellants deny committing the offense at all and claim to have been somewhere else when the burning occurred.

In *State v. Ruddle,* 170 W.Va. 669, 295 S.E.2d 909 (1982), the appellant asserted that the trial court had a duty to instruct

the jury that a verdict of possession of marihuana was possible, as a lesser included offense, under the indictment for delivery of a controlled substance. There, the appellant's sole defense was that he was not present where the offense was committed. We held that "[t]his defense would entitle [the appellant] to a verdict of acquittal had the jury believed his alibi evidence. However, the evidence forms no basis under *Neider* for a lesser included offense instruction since there was no factual conflict on the issue of delivery." *Id.* 170 W.Va. at 671, 295 S.E.2d at 911.

Based upon this reasoning, in light of the appellants' defense in this case that they were elsewhere when the burning occurred, the appellants were not entitled to a lesser included offense instruction, and the circuit court did not commit reversible error by failing to give a lesser included offense instruction.

### VI

 Finally, the appellants contend that the circuit court committed reversible error by failing to advise them of their right to separate counsel.

*W.Va.R.Crim.P.* 44(c) provides:

(c) *Joint Representation.* Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

In the very recent case of *Cole v. White*, 180 W.Va. 393, 399, 376 S.E.2d 599, 605 (1988), we stated that "when a trial court fails to follow the requirements of Rule 44(c) [of the *West Virginia Rules of Crim-*

*inal Procedure*, this Court] will review the record to determine if any conflict likely existed between the jointly represented parties rather than to determine whether there is an actual conflict." If, after reviewing the record, this Court determines no conflict likely existed between the jointly represented parties, such joint representation will not be deemed reversible error.

After reviewing the record in this case, it is clear that no conflict likely existed between the jointly represented parties. Rather, their interests were more compatible as opposed to conflicting. Therefore, such joint representation was not reversible error.

Accordingly, the circuit court did not commit reversible error by failing to advise the appellants of their right to separate counsel.

For the reasons set forth in this opinion, we affirm the judgment of the Circuit Court of McDowell County.

Affirmed.