446 S.E.2d 702

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**David Bruce ADKINS, Defendant Below, Appellant.**

**No. 21865.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 1994.

Decided July 8, 1994.

---

Mary B. McLaughlin, Asst. Atty. Gen., Charleston, for appellee.

George A. Mills III, Huntington, for appellant.

PER CURIAM:

This is an appeal by David Bruce Adkins ("the Appellant") from a June 17, 1988, sentence and order of commitment by the Circuit Court of Wayne County on two counts of arson in the first degree. The lower court sentenced the Appellant to two to twenty years on each count of arson to run concurrently with another unrelated sentence of one to five years on a guilty plea to conspiracy to commit grand larceny. The Appellant contends that various errors committed during his trial on the arson counts justify a remand for a new trial or, in the alternative, release from prison since he has already served five years of his sentence. We are not persuaded by the Appellant's contentions, and accordingly, we affirm the order of the lower court.

### I. Count One—Napier Fire

Count One alleged that the Appellant burned an unoccupied home owned by Pearly Napier (hereinafter "the Napier fire") on December 2, 1987. Elmer Lee Mullins, a friend of the Appellant, testified that he spoke with the Appellant on the night of the Napier fire. He explained that he and the Appellant joined several other friends at the Schoolhouse Hollow to drink beer at approximately 9:30 or 9:45 p.m. Mr. Mullins testified that the Appellant mentioned that a few houses in the area had been burned and discussed various methods of constructing small explosives from shotgun shells. The Appellant asked Mr. Mullins to construct a fire bomb, but Mr. Mullins testified that he declined because he lacked the necessary materials.

Mr. Mullins explained that the Appellant and several friends drove to Mr. Robert Mabry's home, located two miles beyond the Napier home, about twenty to thirty minutes prior to the Napier fire. Mr. Mullins also testified that he spoke with the Appellant on

the morning after the Napier fire and that the Appellant informed Mr. Mullins that he had burned the Napier home.

Mr. Robert Mabry, another friend of the Appellant, also testified that the Appellant admitted to him that he burned the Napier home. Specifically, he testified that the Appellant bragged to him on the day following the fire that the Appellant had burned the home.

James G. Layne, an officer with the Criminal Enforcement Division of the West Virginia State Fire Marshal's office, testified that he visited the Napier home on December 15, 1987, and inspected the remains. In attempting to eliminate accidental causation, Mr. Layne testified that the house was served by natural gas and that he could not completely eliminate natural gas as the cause of the fire. He also testified that two or three old tires and sawdust had been placed close to the foundation crawl space and had been burned. The owner of the home had informed Mr. Layne that he had not placed the tires on the property and that they had not been there upon his last visit prior to the fire. Mr. Layne concluded that the fire was incendiary in origin.

## II. Count Two—Queen Fire

Count Two alleged that the Appellant had burned an unoccupied home owned by Doliver Queen (hereinafter "the Queen fire") on December 28, 1987. Frances Maynard, a neighbor living near the Queen home, testified that she observed the Appellant and another man walk past her home approximately fifteen to twenty minutes before she noticed smoke coming from the vicinity of the Queen home.

Ron Frye, a friend of the Appellant, testified that he and the Appellant walked to the Queen home on the day of the fire to obtain a truck window. Mr. Frye explained that he and the Appellant located the window and then began carrying it down the road. The Appellant then asked Mr. Frye for his cigarette lighter and explained that he wanted to burn a house down. Mr. Frye gave the Appellant his lighter, and the two then parted for approximately ten minutes. Mr. Frye stated that he noticed fire trucks going to-

ward the Queen home about twenty to thirty minutes later.

State Fire Marshal Investigator Lewis Denver Huggins, Jr., testified that he inspected the remains of the Queen home on December 30, 1987, and determined that the fire was "set with human hands." He did not explain the means by which he arrived at this conclusion.

The Appellant maintains that the evidence failed to demonstrate that either of the fires was actually arson and failed to connect the Appellant with the crimes. The Appellant also contends that his trial counsel prejudiced him by failing to renew a motion for judgment of acquittal at the end of the trial and by failing to move to set aside the verdict. The Appellant asserts that the lower court erred in denying his motion for acquittal at the close of the State's case.

## III.

In syllabus point 5 of State v. Mullins, 181 W.Va. 415, 383 S.E.2d 47 (1989), we stated the following:

> To sustain a conviction of arson, when the evidence offered at trial is circumstantial, the evidence must show that the fire was of an incendiary origin and the defendant must be connected with the actual commission of the crime.

We also explained in State v. Yates, 169 W.Va. 453, 288 S.E.2d 522 (1982) that two elements are necessary to sustain an arson conviction when the evidence is circumstantial. These include proof that the fire was of incendiary origin and evidence by the State which connects the defendant with the commission of the crime. Id. at 454–55, 288 S.E.2d at 523 (citing State v. Jones, 161 W.Va. 55, 66, 239 S.E.2d 763, 769 (1977) and State v. Clay, 135 W.Va. 618, 625, 64 S.E.2d 117, 121 (1951)).

The only evidence in Mullins of incendiary origin consisted of the testimony of fire marshals that they believed the fire to be of incendiary nature, caused by a flammable liquid. 181 W.Va. at 420, 383 S.E.2d at 52. In Yates, the evidence of incendiary origin consisted only of the opinion of a deputy marshall that the fire was of such origin.

169 W.Va. at 454, 288 S.E.2d at 523. Evidence was even introduced in the *Yates* trial contradicting the State's evidence that the fire was incendiary in nature. *Id.* Yet this Court found that the jury's determination that the fire was incendiary should stand. *Id.* at 455, 288 S.E.2d at 523.

■ With regard to the incendiary nature of the Napier fire in the present case, James Layne testified that he could not completely eliminate natural gas or electrical causation. However, he did state that the fire was suspicious and concluded that "there was possibly an incendiary fire." No physical evidence was introduced. Similarly, with regard to the Queen fire, although no physical evidence was introduced, Lewis Huggins testified that the fire was "set with human hands."

While we do recognize that the evidence regarding the incendiary nature of the fires was rather limited, there was sufficient evidence upon which to sustain the jury's conclusion that the fires were of an incendiary nature.

■ The Appellant also suggests that the evidence was insufficient to connect him with the fires. We explained the following in the syllabus of *Yates:*

> ·'In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.' Syllabus Point 1, *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978).

169 W.Va. at 453, 288 S.E.2d at 522.

The Appellant's position as to the insufficiency of the evidence is particularly untenable in light of the extensive testimony regarding the Appellant's own inculpatory statements as to his involvement in the fires. Several of the Appellant's acquaintances testified regarding not only the Appellant's interest in fires but also his actual statements that he burned the Napier house. According to the testimony, the Appellant told two friends that he had burned the Napier home, and he had borrowed the cigarette lighter of another friend in the vicinity of the Queen home with the stated purpose of burning a house down. Considering such direct and inculpatory statements both before and after the fires, together with evidence that the fires were incendiary in nature, the evidence in this was sufficient to sustain the convictions.

## IV.

■ The Appellant also alleges that the lower court improperly admitted two photographs of the scenes of the alleged arson. The Appellant contends that the lower court erred in admitting the photographs because they were not taken by the witnesses through whom the State introduced the photographs. The Appellant maintains that the manner of introduction constituted lack of proper identification since the photographs were taken by a Corporal Dryer and introduced during the testimony of the investigating officer, Deputy Rex Varney.

■ In *Merrill v. Marietta Torpedo Co.,* 79 W.Va. 669, 92 S.E. 112 (1917), we held that relevant photographs were admissible if identified either by the photographer who took them or by some other person familiar with the scene. The fact that the photographs were taken by one individual and introduced into evidence during the testimony of another individual is not error. In this instance, although the photographs were taken by Corporal Dyer, Deputy Varney was equally competent to identify the photographs as accurately depicting the scene of the fire as he saw it upon his inspection of the premises.[1]

---

1. Counsel for the Appellant did not object to the introduction of the photographs during the testimony of Deputy Varney.

Having reviewed the record and the arguments of counsel, we therefore affirm the order of the lower court.

Affirmed.