**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 14-0080** (Cabell County 06-F-265)

**Richard P.,**
**Defendant Below, Petitioner**

**FILED**

November 21, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner and defendant below Richard P.,[1] by counsel Connor D. Robertson, appeals his convictions by a jury in the Circuit Court of Cabell County of five counts of third degree sexual assault and one count of attempted third degree sexual assault.[2] The State of West Virginia, by counsel Christopher S. Dodrill, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming petitioner's conviction is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 6, 2006, petitioner, who was thirty-six years old at the time the crimes herein first transpired, was indicted on six counts of sexual assault in the third degree. Counts I and II of the indictment alleged that he had engaged in oral sex with his sister's stepdaughter, O.C., sometime in 2004; Count III alleged that he had engaged in vaginal intercourse with O.C. on January 15, 2005; Counts IV and V alleged that he had engaged in vaginal intercourse with O.C. during the five-month period between January 16, 2005, and May 16, 2005; and Count VI alleged that he had engaged in vaginal intercourse with O.C. on May 16, 2005.

At trial, O.C. testified that she first met petitioner when she was in the fourth grade and that she often slept over at his house when she babysat or played with his four children. At the time, O.C.'s father was married to petitioner's sister. With regard to Counts I and II, O.C. testified that, in 2004, after she had turned thirteen years old, she was at petitioner's home

---

[1] Given the sensitive nature of this case and the fact that the victim was a minor, we adhere to our practice of using the first name and last initial of petitioner and the child victim's initials. *See State v. Haid*, 228 W. Va. 510, 513 n.1, 721 S.E.2d 529, 532 n.1 (2011); *In re Jeffrey R.L.,* 190 W.Va. 24, 26 n.1, 435 S.E.2d 162, 164 n.1 (1993); *State v. Edward Charles L.,* 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990); *see also* W.Va.R.App.P. 40(e)(1).

[2] *See* W.Va. Code §§ 61-8B-5 (2000) and 61-11-8 (2002).

1

babysitting his children. While the children were asleep,[3] petitioner asked her if she "want[ed] to have some fun[.] Nobody is home." Petitioner told her, "You can please me. I can please you[,]"and "I can show you how to please another guy." Petitioner then had her perform oral sex on him. O.C. further testified that, on a second occasion, petitioner said similar things to her before sexually assaulting her by having her perform oral sex on him. Petitioner sexually assaulted O.C. on at least several occasions thereafter, while O.C. was at petitioner's house. O.C. stated that if she was in bed, petitioner would wake her up and "ask me the same things. If I would roll over or try to ignore him, he would pull off the blanket and start kissing me or rub his legs between—or his hand between my legs and I would eventually get up." She further testified that "I would normally get up. . . . I would go in the living room. We would do whatever, and I would go back to the bathroom, brush my teeth, and just go to bed like nothing ever happened." O.C. explained to the jury that "do[ing] whatever" meant that she would perform oral sex on him. According to O.C., she frequently told petitioner that she was scared she would get into trouble "and he had told me that if I didn't tell anyone, nobody would know so I couldn't get in trouble. And if anybody did, he would take care of them."

With regard to Counts III, IV, and V, O.C. testified that, on January 15, 2005, her fourteenth birthday, petitioner coerced her into having vaginal intercourse while she was again at his house babysitting his children,[4] and that she had vaginal intercourse with him on several other occasions thereafter. She indicated that although she did not know the precise dates on which the assaults occurred, she testified that they occurred between her birthday, January 15, 2005, and the day she went to the police station, May 15, 2005; that they "had sex frequently. . . .[a]t his house[;]" and that it always happened "after midnight" except on one occasion when it happened during the day while the children were playing outside.

Regarding Count VI of the indictment, O.C. testified that, on May 15, 2005, while she was alone at the home she shared with her father and step-mother (petitioner's sister), petitioner called her at approximately 2:30 p.m. and asked to come over. Although O.C. tried to dissuade him, he came over anyway. According to O.C.,

> We were in the living room. We started kissing, and we went to my mom and dad's bedroom. My shorts and underwear were off and his pants were unzipped. I was laying on the bed. I do not remember if he actually got his penis into me, but my stepmom came home.

O.C. testified that petitioner ran into the bathroom while trying to pull up his pants and O.C. hid under the bed in her bedroom. Petitioner left the house after speaking with his sister. When asked

---

[3] When sleeping over at petitioner's house, O.C. slept on a mattress in the dining room. Petitioner's wife apparently slept in the master bedroom, which was located on the second floor. Petitioner testified that he slept on the couch in the living room and that he had done so for approximately four years.

[4] Petitioner presented testimony that O.C. did not babysit on the night of her birthday.

by her step-mother why petitioner was at their house, O.C. told her what had occurred.[5] O.C.'s step-mother and/or father contacted law enforcement. Petitioner gave two statements to the police.

O.C.'s counselor, Megan Mynes, who was qualified as an expert in the area of childhood sexual abuse, testified that O.C's behavior was consistent with having been sexually abused. On cross-examination of Ms. Mynes, petitioner elicited testimony that O.C.'s behavior was also characteristic of children whose parents were going through a separation as O.C.'s father and step-mother were at the time she began treating O.C.

Petitioner testified at trial and denied the allegations alleged in the indictment.

On September 14, 2007, upon the conclusion of the two-day jury trial, petitioner was convicted on five counts of third degree sexual assault, as charged in Counts I through V of the indictment. With regard to Count VI, petitioner was convicted on a lesser-included attempt offense because the trial court found that there was no vaginal penetration in connection with that charge. Petitioner was sentenced to consecutive terms of one to five years of incarceration for Counts I through V, and a term of one to three years for Count VI, which was ordered to run consecutively to the other sentences. Petitioner's post-trial motions for post-verdict judgment of acquittal and for a new trial were denied. Petitioner was re-sentenced by order entered December 3, 2013, for purposes of perfecting this direct appeal.[6]

Our review of the circuit court's order denying petitioner's motion for a new trial is guided by syllabus point two of *Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc.*, 223 W.Va. 209, 672 S.E.2d 345 (2008), which directs that

> "the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. Pt. 4, in part, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976).

We further explained that "[w]e review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, . . . the circuit court's underlying factual findings under a clearly erroneous standard [and][q]uestions of law . . . [under] a de novo standard." *Estep,* 223 W.Va. at 215, 672 S.E.2d at

---

[5] At trial, O.C.'s stepmother, who had since divorced O.C.'s father, failed to give any meaningful answers on either direct or cross-examination, for which she was held in contempt of court.

[6] Petitioner filed a petition for writ of habeas corpus on June 22, 2010, and hearings thereon were conducted. By order entered May 31, 2011, petitioner's request for habeas relief was denied. Petitioner appealed the habeas court's order to this Court, which was affirmed by Memorandum Decision on November 19, 2012. *See Paulding v. Plumley,* No. 11-1000 (W.Va. Supreme Court, November 19, 2012) (memorandum decision).

351 (quoting *Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995)). As to the circuit court's ruling that denied petitioner's post-verdict motion for judgment of acquittal, the Court applies a de novo standard of review based upon the sufficiency of the evidence. *State v. LaRock,* 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996). *See State v. Juntilla*, 227 W.Va. 492, 711 S.E.2d 562 (2011); *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

In his first assignment of error, petitioner argues that O.C.'s testimony regarding each sexual assault was uncorroborated and so inherently incredible that his convictions should be reversed. Specifically, petitioner contends that there were no witnesses to the alleged crimes (other than the victim); that the testimony of both O.C.'s counselor and the law enforcement officer to whom O.C. gave statements were merely recitations of the events as recounted by O.C.; and that O.C. was unable to provide any details with regard to some of the alleged assaults, such as whether she was clothed, whether petitioner made any noise, whether petitioner's wife was at home, or whether petitioner ejaculated.

In syllabus point five of *State v. Beck,* 167 W.Va. 830, 286 S.E.2d 234 (1981), this Court established that "[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury." In this regard, we have explained that "[i]nherent incredibility, . . . is more than contradiction and lack of corroboration." *Edward Charles L.*, 183 W.Va. at 659, 398 S.E.2d at 141 (quoting *State v. McPherson*, 179 W.Va. 612, 617, 371 S.E.2d 333, 338 (1988)). Rather, inherent incredibility requires "'a showing of "complete untrustworthiness" . . . [testimony which] defies physical laws.'" *Id. See State v. Ayers*, 179 W.Va. 365, 371, 369 S.E.2d 22, 28 (1988) (holding that "'[w]hether the witnesses are to be believed or disbelieved is a matter for jury consideration. An appellate court cannot invade the province of the jury concerning the weight of the evidence, where such evidence is not incredible; nor can it judge the credibility of witnesses.'" (quoting *State v. Bailey*, 151 W.Va. 796, 806, 155 S.E.2d 850, 856 (1967)).

In this case, the circuit court instructed the jury as follows:

> The Court instructs the jury that a conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible and the credibility is a question for the jury. The Court further instructs the jury that they should scrutinize such testimony with care and caution.

*See McPherson*, 179 W.Va. at 616, 371 S.E.2d at 337 (referring to *State v. Perry*, 41 W.Va. 641, 652 24 S.E. 634, 638 (1896), where above-quoted jury instruction originated, "as it leaves the weight of the testimony entirely with the jury and relates only to the proper discharge of the duty they owe to the accused and the state alike").

Petitioner's argument that O.C.'s testimony was inherently incredible is not persuasive. O.C. was a child when the sexual abuse commenced and testified to the incidents as she recalled them at trial, some two years after the abuse ceased. The fact that her accounts were lacking in particular details does not render her testimony inherently incredible. Rather, it was for the jury

4

to assess O.C.'s credibility after evaluating her demeanor and carefully and cautiously scrutinizing her testimony in the context in which it was given. The jury was properly instructed in this regard, and we find no error.

Petitioner's next assignment of error is that the circuit court erred in allowing hearsay evidence in connection with Count III of the indictment, which charged petitioner with sexually assaulting O.C. on January 15, 2005. Petitioner argues that he presented alibi evidence that, on that date, he and his family were at a wrestling tournament all day; that O.C. did not babysit that day; that he, his wife, and three of his children returned home at approximately 6:30 p.m., which was before the tournament ended; and that his oldest child stayed at the tournament until it ended at approximately 11:00 p.m. On cross-examination of petitioner, the State attempted to impeach this testimony by asking petitioner if he knew of an individual named Bob Lewis, who was apparently affiliated with the wrestling tournament. Petitioner argues that the following questioning insinuated that the State had spoken with Mr. Lewis—who was not called as a witness—and that Mr. Lewis provided information that contradicted petitioner's direct testimony:

> Q (by the State): So, if there was information that [the tournament] actually ended at 6:30, that would be incorrect. You are saying that one didn't end until 11:00.
>
> Petitioner's Counsel: Objection, I am going to object to that. It's hearsay. I see where she is going and it certainly is calling for hearsay. She is citing somebody that is not here.
>
> The Court: That question is proper. I will let him answer that.
>
>     . . . .
>
> Q (by the State): So, if there was any information that this may have occurred, this—excuse me. That may have been over at 6:30, 6:45, that's incorrect?
>
> A: I don't know. I am telling you what time I left. I don't know what time the tournament ended.

Petitioner argues that the above line of questioning constituted "hearsay by implication" and was inadmissible as violative of West Virginia Rule of Evidence 802. "Hearsay by implication" is "the attempt to avoid an explicit reference to an out-of-court statement by artful questioning." 2 Franklin J. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 801.02[1][f] (5th ed. 2012). Petitioner further argues that the error was compounded by the State's reference in its closing argument to the hour at which the sexual assault occurred on that date: "[i]t was late at night after midnight or around midnight, way after some wrestling tournament would have been over because that was over at 6:30, we know."

As set forth above, Petitioner testified that he left the tournament at approximately 6:30 p.m.—before it concluded—and returned home. He contends that the State offered the information that the tournament ended at 6:30 p.m. for the truth of the matter asserted. Whether the tournament concluded at that time is of little consequence given that O.C. testified that the

sexual assaults occurred at or around midnight (with one exception not applicable to this occasion). Thus, if the above-described testimony were deemed to be "hearsay by implication" and if it were admitted in error, any alleged error was harmless because it is clear that "after stripping the erroneous evidence from the whole, that the remaining evidence was independently sufficient to support the verdict[,] and the jury was not substantially swayed by the error." *Guthrie*, 194 W.Va. at 684, 461 S.E.2d at 190. *See also State v. White*, 223 W.Va. 527, 532, 678 S.E.2d 33, 38 (2009) (stating that "'where a nonconstitutional error has been asserted, . . . the case will not be reversed unless the error is prejudicial to the defendant.'" (quoting *State v. Atkins*, 163 W.Va. 502, 510, 261 S.E.2d 55, 60 (1979), *cert. denied*, 445 U.S. 904 (1980))).[7]

In his third assignment of error, petitioner argues that he was denied the constitutional right to a fair trial because the State failed to abide by the circuit court's pre-trial order to provide him with information as to time frames[8] during which the sexual assaults were alleged to have occurred.[9] Petitioner requested a bill of particulars in this regard on two occasions prior to trial. The circuit court first acknowledged that, in cases such as these, a victim's young age often makes it difficult to ascertain the precise dates upon which the alleged crimes transpired. Given O.C.'s relatively young age of thirteen, the circuit court instructed the State to do its best to establish time frames. The circuit court stated, in relevant part, that "[w]e will ask her to make

---

[7] Petitioner also argues that admission of the testimony regarding the wrestling tournament violated the Confrontation Clause as set forth in the Sixth Amendment to the United States Constitution and section 14 of article III of the West Virginia Constitution. Petitioner concedes that he failed to object to the admission of the testimony on these grounds at trial and, thus, argues that the plain error standard should be applied. *See LaRock*, 196 W. Va. at 316-17, 470 S.E.2d at 635-36 (1996) (stating that plain error standard is satisfied if "'(1) there was error in the trial court's determination; (2) the error was plain or obvious; and (3) the error affected 'substantial rights' in that the error was prejudicial and not harmless. If these criteria are met, this Court may, in its discretion, correct the plain error if it "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" (Internal citations omitted).). Given that we have already determined that any error in the admission of the testimony, if it was error, was harmless, we find that we need not conduct a review under a plain error analysis. *See State v. Salmons*, 203 W.Va. 561, 582, 509 S.E.2d 842, 863 (1998) (reiterating that "'[i]n a constitutional context, the [harmless error] doctrine is also applied because appellate courts are not bound to reverse for a technical violation of a fundamental right.'" (quoting *State v. Blair*, 158 W.Va. 647, 659, 214 S.E.2d 330, 337 (1975))).

[8] As previously noted, in Counts I and II, the State alleged that petitioner sexually assaulted O.C. in 2004; in Count III, on January 15, 2005; in Counts IV and V, sometime between January 16, 2005, and May 16, 2005; and in Count VI, on May 16, 2005.

[9] *See* Syl. Pt. 2, *State v. Grimm*, 165 W.Va. 547, 270 S.E.2d 173 (1980) (holding that "[w]hen a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case.")

sure that that's the best she can give you, but she's just—I think the law just requires for them to give you the best that they can." Petitioner argues that, prior to trial, the State failed to comply with the circuit court's order by failing to provide any information as to days, weeks, months, or seasons when the crimes allegedly occurred. He further contends that his counsel did not learn until the first day of trial that the victim intended to testify that the alleged crimes occurred after midnight (the fact of which the State itself was unaware until one day before the trial commenced). Petitioner argues that, had he had adequate notice, he could have produced authenticated employment records demonstrating that he often worked the midnight shift and was not at home when the crimes herein allegedly occurred.[10]

The record on appeal does not support petitioner's contention that the State failed to comply with the circuit court's order directing it to disclose information regarding the time frames during which the sexual assaults herein were alleged to have occurred. There is simply no evidence that the State possessed any information that it failed to share. Almost as soon as it learned that the crimes were alleged to have occurred after midnight, it advised petitioner's counsel accordingly, in compliance with the circuit court's directive. Petitioner's argument to the contrary is without merit and his right to a fair trial was not violated. *See State v. Miller*, 195 W.Va. 656, 663, 466 S.E.2d 507, 514 (1995) (finding that State provided defense with all information it had concerning when alleged assaults occurred; that information was provided in advance; that defense had just as much information as State had; and concluding that indictment gave defendant fair notice of charges against him).

In his fourth assignment of error, petitioner alleges that the State's failure to provide petitioner with time-frame information as requested in his bill of particulars rendered Counts I,[11] II,[12] IV,[13] and V[14] of the indictment constitutionally deficient because the counts potentially

---

[10] Petitioner does not aver that he requested a continuance upon learning this information. At trial, petitioner presented to the jury unauthenticated employment records covering March of 2005 through mid-May of 2005. It is noted that the records were not particularly exculpatory. On cross-examination of petitioner, the State pointed out that the records indicated that petitioner did not even work on numerous dates during that period and failed to clarify whether petitioner primarily worked the midnight shift (as he claimed) because the records did not denote whether the hours worked were "p.m." or "a.m." Furthermore, petitioner testified that two to three weeks during that period constituted an orientation period during which he worked the day shift.

[11] Count I stated as follows:

That sometime during the calendar year, 2004, in the County of Cabell, State of West Virginia, [petitioner], committed the offense of "3RD DEGREE SEXUAL ASSAULT" by unlawfully and feloniously engaging in sexual intercourse with [O.C.], a female person, less than sixteen (16) years of age, to-wit: thirteen (13) years old, by placing his penis in her mouth, when the said [petitioner] was more than sixteen (16) years of age and more than four (4) years older than the said [O.C.], against the peace and dignity of the State.

[12] Count II stated as follows:

subjected him to double jeopardy, in violation of the Fifth Amendment to the United States Constitution and article III, section 5 of the West Virginia Constitution. More specifically, he argues that

> "'[a]n indictment is bad or insufficient . . . when within the four corners of the indictment[,] it: (1) fails to contain the elements of the offense to be charged and sufficiently apprise the defendant of what he or she must be prepared to meet; and (2) fails to contain sufficient accurate information to permit a plea of former acquittal or conviction.' *Russell v. United States*, 369 U.S. 749, 763-64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240, 250-51 (1962)." *State ex rel. Forbes v. Canady*, 197 W.Va. 37, 41, 475 S.E.2d 37, 41 (1996), *superseded by rule on another point of law*, *State v. Harman*, 229 W.Va. 749, 735 S.E.2d 898 (2012).

*Ballard v. Dilworth*, 230 W.Va. 449, 455, 739 S.E.2d 643, 649 (2013). Stated another way,

---

The Grand Jury further charges that sometime during the calendar year, 2004, but at a time different than as set forth in Count I, in the County of Cabell, State of West Virginia, [petitioner], committed the offense of "3RD DEGREE SEXUAL ASSAULT" by unlawfully and feloniously engaging in sexual intercourse with [O.C.], a female person, less than sixteen (16) years of age, to-wit: thirteen (13) years old, by placing his penis in her mouth, when the said [petitioner] was more than sixteen (16) years of age and more than four (4) years older than the said [O.C.], against the peace and dignity of the State.

[13] Count IV stated as follows:

The Grand Jury further charges that sometime between January 16, 2005, and May 16, 2005, in the County of Cabell, State of West Virginia, [petitioner], committed the offense of "3RD DEGREE SEXUAL ASSAULT" by unlawfully and feloniously engaging in sexual intercourse with [O.C.], a female person, less than sixteen (16) years of age, to-wit: thirteen (13) years old, by placing his penis in her vagina, when the said [petitioner] was more than sixteen (16) years of age and more than four (4) years older than the said [O.C.], against the peace and dignity of the State.

[14] Count VI stated as follows:

The Grand Jury further charges that sometime between January 16, 2005, and May 16, 2005, but at a time other than as contained in Count IV, in the County of Cabell, State of West Virginia, [petitioner], committed the offense of "3RD DEGREE SEXUAL ASSAULT" by unlawfully and feloniously engaging in sexual intercourse with [O.C.], a female person, less than sixteen (16) years of age, to-wit: thirteen (13) years old, by placing his penis in her vagina, when the said [petitioner] was more than sixteen (16) years of age and more than four (4) years older than the said [O.C.], against the peace and dignity of the State.

"'[a]n indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W.Va.R.Crim.P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy.' Syl. Pt. 6, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999)." Syl. Pt. 5, State v. Haines, 221 W.Va. 235, 654 S.E.2d 359 (2007).

*Dilworth*, 230 W.Va. at 450, 739 S.E.2d at 644, syl. pt. 4. Petitioner contends that Counts I, II, IV, and V are inherently vague; that one cannot be distinguished from the others; and that they are, therefore, deficient because they fail to contain sufficient accurate information that would permit him to assert an acquittal or conviction so as to prevent being placed twice in jeopardy. *See Id.*

This Court has stated that "'[g]enerally, the sufficiency of an indictment is reviewed *de novo*.'" *Dilworth*, 230 W.Va. at 454, 739 S.E.2d at 648 (quoting *Miller*, 197 W.Va. at 593, 476 S.E.2d at 540, syl. pt. 2, in part). Our review is further guided by the following:

"'An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based.' Syl. Pt. 3, *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983)." Syl. Pt. 1, *State v. Mullins*, 181 W.Va. 415, 383 S.E.2d 47 (1989).

*Dilworth*, 230 W.Va. at 450, 739 S.E.2d at 644, syl. pt. 3. Indeed, "[a]n indictment need only meet minimal constitutional standards," and its sufficiency "is determined by practical rather than technical considerations." *Miller*, 197 W.Va. at 593, 476 S.E.2d at 540, syl. pt. 2, in part.

We find that petitioner was provided fair and adequate notice of the offenses with which he was charged. The indictment identified the victim and the offenses committed. Counts I and II identified the year in which the crimes alleged therein transpired (2004), while Counts IV and V more specifically provided that the crimes alleged occurred between January 16, 2005, and May 16, 2005. Furthermore, all of the counts substantially followed the language of West Virginia Code § 61-8B-5 under which the offenses were charged. Under our existing law, we conclude that Counts I, II, IV, and V of the indictment are constitutionally sufficient and do not violate double jeopardy principles.

Finally, given all of the above, we reject petitioner's argument that he was denied his right to a constitutionally fair trial based upon cumulative error. *See* Syl. Pt. 5, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972) (holding that "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error.").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  November 21, 2014

**CONCURRED IN BY:**

Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Robin Jean Davis