IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1456

_____

**FILED**

**February 22, 2013**

released at 3:00 p.m.

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

DAVID BALLARD, WARDEN,
Respondent Below, Petitioner

v.

STEVE LEE DILWORTH
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Gilmer County
Honorable Jack Alsop, Judge
Civil Action No. 10-C-11

REVERSED

_____

Submitted: January 16, 2013
Filed: February 22, 2013

Gerald B. Hough, Esq.
Prosecuting Attorney for Gilmer County
Glenville, West Virginia
Counsel for the Petitioner

Ray M. Shepard, Esq.
Smith, Gildea & Schmidt LLC
Towson, Maryland
Counsel for the Respondent

The Opinion of the Court was delivered PER CURIAM.

1. "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

2. "Generally, the sufficiency of an indictment is reviewed *de novo*. An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." Syl. Pt. 2, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996).

3. "'An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based.' Syl. Pt. 3, *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983)." Syl. Pt. 1, *State v. Mullins*, 181 W.Va. 415, 383 S.E.2d 47 (1989).

4. "'An indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W.Va. R.Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy.' Syl. Pt. 6, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999)." Syl. Pt. 5, *State v. Haines*, 221 W.Va. 235, 654 S.E.2d 359 (2007).

Per Curiam:

Petitioner David Ballard, Warden of the Mount Olive Correctional Complex (hereinafter "Warden Ballard"),[1] appeals from the September 21, 2011, order of the Circuit Court of Gilmer County setting aside the conviction and sentence of the respondent herein and petitioner below, Steve Lee Dilworth (hereinafter "Mr. Dilworth"), on nine of ten counts of sexual abuse by a guardian. In granting relief to Mr. Dilworth on his habeas corpus petition, the circuit court found that the indictment was constitutionally deficient because it did not provide adequate notice of each of the charges and potentially subjected him to double jeopardy.[2] The circuit court did not disturb Mr. Dilworth's conviction and sentence on Count One finding that the indictment provided him with adequate notice to defend as to one count of sexual abuse by a guardian. Warden Ballard seeks to reverse the circuit court's ruling and argues that the indictment was constitutionally sufficient. Having fully considered

[1]Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, this Court has substituted the petitioner's name with David Ballard, who is the current Warden at the Mount Olive Correctional Complex.

[2]The parties represent and the circuit court's habeas order reflects that on November 12, 2008, Mr. Dilworth filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of West Virginia. In the federal magistrate judge's "Report and Recommendation," it was recommended that Mr. Dilworth be denied relief on five of the six grounds asserted, but that relief be granted on ground four challenging the constitutional sufficiency of his indictment. *Dilworth v. Markle,* 2009 WL 5874321 (N.D.W.Va.). Thereafter, the federal district court judge entered a habeas order (1) adopting the magistrate judge's recommendation that relief on five of the six grounds be denied; (2) holding in abeyance a ruling on ground four to allow Mr. Dilworth an opportunity to present his unexhausted federal claim in state court (which he has done in the case *sub judice*); and (3) staying Mr. Dilworth's federal habeas corpus proceeding for this purpose.

1

the appendix record in this matter in conjunction with the parties' briefs and the arguments presented, this Court reverses the circuit court's order granting habeas relief and orders that Mr. Dilworth remain imprisoned under the sentencing order entered in the underlying criminal proceeding.

## I. Factual and Procedural Background

On July 6, 2006, Mr. Dilworth was indicted on ten counts of sexual abuse by a guardian. Each count of the indictment involved Mr. Dilworth's stepdaughter, D. H. (hereinafter "the victim"),[3] who was seventeen years old when she reported the abuse to her mother, Christine Dilworth. Mrs. Dilworth confronted Mr. Dilworth and later contacted law enforcement. Mr. Dilworth was taken into custody on May 24, 2006. While in police custody, Mr. Dilworth confessed to sexually abusing the victim throughout a period of several years, although he could not identify specific dates and times.

---

[3]Because the victim was a child at the time of the commission of the crimes, this Court follows its customary practice with sensitive matters involving minors and refers to the victim by her initials. *See In re Cesar L.*, 221 W.Va. 249, 352 n.1, 654 S.E.2d 373, 376 n.1 (2007).

Each count[4] of Mr. Dilworth's indictment charged an offense under West Virginia Code § 61-8D-5(a) (2005), which provides, in pertinent part, as follows:

> If any parent, guardian or custodian of or other person in a position of trust in relation to a child under his or her care, custody or control, shall engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control, notwithstanding the fact that the child may have willingly participated in such conduct, or the fact that the child may have consented to such conduct or the fact that the child may have suffered no apparent physical injury or mental or emotional injury as a result of such conduct, then such parent, guardian, custodian or person in a position of trust shall be guilty of a felony . . . .

---

[4]Each count of Mr. Dilworth's indictment stated, as follows:

That on or about the ___ day of ___, 2001, in Gilmer County, West Virginia, **STEVE LEE DILWORTH** committed the felony offense of **SEXUAL ABUSE BY PARENT OR GUARDIAN** in that he, the said **STEVE LEE DILWORTH**, did then and there willfully, intentionally, unlawfully, knowingly, and feloniously engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with a child under his care, custody or control, and he was then the parent or guardian of the said child, to-wit: **STEVE LEE DILWORTH** did, on or about the ___ day of ___, 2001, in Gilmer County, West Virginia, willfully, intentionally, unlawfully, knowingly, and feloniously engage in or attempt to engage in sexual exploitation of, or in sexual intercourse, sexual intrusion or sexual contact with, **[the victim]**, a child under his care, custody or control, and he was then the guardian of the said **[the victim]**, against the peace and dignity of the State of West Virginia in violation of West Virginia Code §61-8D-5(a).

3

At trial, held on January 30 and 31, 2007, the victim testified to sexual conduct that began when she was eight years old while the family was living in Maryland. As to the acts of sexual abuse that occurred in 2001, in West Virginia, the victim testified, as follows:

Q:   And tell us about the year 2001 and any activities of sexual abuse by [Mr. Dilworth] upon you.

A:   [Mr. Dilworth] would come into my bedroom in Coxs Mill, and it was usually always in the early morning . . . he would lay behind me and just start to, like, rub my back and stuff underneath of my shirt or pajamas, and that would turn to, like, breast fondling, and he would rub his penis on my butt area, and then sometimes he would lick or suck on my breasts, and he'd pull down my pants sometimes and, like, just, you know, spread my legs and look in my vaginal area . . .

• • •

Q:   Can you say exactly how many times he [Mr. Dilworth] came in your room in 2001?

A:   No, I can't.

Q:   Would you be able to truthfully tell this jury it was more than once?

A:   (Nodded.) Yes.

Q:   Was it as many as ten times?

A:   (Nodded.) Yes.

Q:   Was it at least ten times?

A:   Yes. (Crying.)

• • •

Q:   So between January 1, 2001, when you're 12 and your last clearly recollected . . . out of the ten is in November 2001. Between January 2001 and November 2001, did that defendant early in the morning come into your bedroom and touch you sexually?

A:   Yes.

Q:   More than once?

A:   Yes.

Q:   At least ten times?

A:   Yes. (Crying.)

4

Q. Can you recollect the exact date? Did you mark them on a calendar?

A. (Shook head.) No.

Q. Was it the routine in the household for . . . your stepdad, to come in and help you get started for school, to get dressed, or to get ready?

A. He would wake me up.

• • •

Q. In the year 2001, did that defendant (indicated) wake you up ten times sexually?

A. Yes.

Although Mr. Dilworth did not testify at trial, his incriminating statement[5] given to West Virginia State Trooper Robert Smith on May 24, 2006, was read into evidence at trial by Trooper Smith. In this statement, Mr. Dilworth stated, in part, as follows:

Q: Where did you touch her [the victim]?

A: I touch [sic] her a**, and I then touch [sic] her boobs *about five years ago*. It started by cuddling, then I touched her boobs, I knew I was wrong. (Emphasis added).

• • •

Q: Approximately, how many time [sic] would you say you touch [sic] her breast or butt?

A: I do not known [sic].

Q: Where would this take place in the house?

A: Usually in her room.

Q: How would it started [sic]?

---

[5]The trial transcript reflects that Trooper Smith's interview of Mr. Dilworth took place in the Trooper's cruiser and that the in-cruiser video equipment recorded the interview. Although Mr. Dilworth could not be seen in this recording, both he and Trooper Smith could be heard. This recording was played for the jury and admitted into evidence at trial.

A:     It didn't start out sexually. I wasn't trying to get fu\*\*ed, it was loving. I fu\*\*ed up years ago . . . You can't take back what you did.

• • •

Q:     When you touched her breast, how would you touch them?

A:     Just rub them.

Q:     How about her butt?

A:     Just rub on it.

Q:     Did you become sexually arouse [sic]?

A:     Yes.

• • •

Q:     Can you recall the first incident?

A:     No.

Q:     Do you know the year?

A:     No.

Q:     How about the season?

A:     No.

• • •

Q:     Would you say you touched her breast or butt more than ten times [sic]?

A:     Yes

Q:     How about twenty time [sic]?

A:     I don't know. Once is bad enough.

Q:     Did the touching happen often?

A:     I don't remember.

Q:     Over how many years did this occurr [sic]?

A:     Many year [sic]. I do not remember individivul [sic] times, if I could I could count them.

At the close of the State's case and, again, after the defense rested, Mr. Dilworth moved for a judgment of acquittal pursuant to Rule 29 of the West Virginia Rules of Criminal Procedure. Mr. Dilworth argued that the State's evidence failed to prove that he was the victim's "guardian" as charged in the indictment. The trial court denied both of these

6

motions. On January 31, 2007, the jury returned its verdict finding Mr. Dilworth guilty on all ten counts of the indictment. By order entered on April 19, 2007, the circuit court sentenced Mr. Dilworth to ten to twenty years of incarceration on each of the ten counts, running the sentences imposed on Counts One, Two, and Three consecutively, suspending the sentences imposed on Counts Three through Ten, and imposing a probationary period of five years upon Mr. Dilworth's release from incarceration.

On January 10, 2008, Mr. Dilworth's direct appeal to this Court was refused unanimously.[6] On July 20, 2010, following the stay of his federal habeas proceeding,[7] Mr. Dilworth filed a petition for a writ of habeas corpus and a supporting memorandum of law in the circuit court setting forth six grounds for relief.[8]

---

[6]Under this Court's appellate rules in effect at the time of Mr. Dilworth's direct criminal appeal, his petition was refused without a written decision by this Court. Also, while Mr. Dilworth arguably raised the issue currently before this Court in his direct criminal appeal, which he couched in terms of a denial of his right to a unanimous verdict, this Court's refusal of his direct criminal appeal does not preclude its review of this issue in a subsequent habeas. *See* Syl., *Smith v. Hedrick*, 181 W.Va. 394, 382 S.E.2d 588 (1989) ("This Court's rejection of a petition for appeal is not a decision on the merits precluding all future consideration of the issues raised therein, unless . . . such petition is rejected because the lower court's judgment or order is plainly right, in which case no other petition for appeal shall be permitted.").

[7]*See* note 2, *supra*.

[8]These were the same grounds raised in Mr. Dilworth's habeas petition filed in federal court.

On September 21, 2011, the circuit court entered an order denying habeas relief on all but one of the grounds propounded by Mr. Dilworth on the basis that he was estopped under West Virginia Code § 53-4A-1(b)[9] from asserting claims previously adjudicated by the district court in his federal habeas proceeding.[10] The circuit court addressed Mr. Dilworth's challenge to the constitutional sufficiency of his indictment based on the identical wording of the counts. Relying upon *Russell v. United States*, 369 U.S. 749 (1962), and *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), the circuit court found that the subject indictment conflicted with constitutional due process requirements by failing to apprise Mr. Dilworth of the charges against him for purposes of preparing a defense. The circuit court further found that the indictment exposed Mr. Dilworth to double jeopardy based on the possibility that the same evidence would be used to convict him on multiple, identical counts. The circuit court ordered that Mr. Dilworth's conviction and sentence on nine of the ten counts be vacated and set aside, but allowed his conviction and sentence on the sole remaining count to stand. On January 24, 2012, the circuit court entered an order that denied Warden Ballard's motion to reconsider the circuit court's grant of habeas. Through this appeal,

---

[9]West Virginia Code § 53-4A-1(b) provides, in pertinent part, that "a contention or contentions and the grounds in fact or law relied upon in support thereof shall be deemed to have been previously and finally adjudicated only when . . . there was a decision on the merits thereof after a full and fair hearing thereon . . . ."

[10]We note that in the case *sub judice*, Mr. Dilworth does not cross-assign as error the circuit court's ruling in this regard.

Warden Ballard seeks to reverse the circuit court's decision to grant habeas relief to Mr. Dilworth.

## II. Standard of Review

As this Court stated in syllabus point one of *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006), our review of the circuit court's habeas ruling is governed by the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Because the circuit court concluded that Mr. Dilworth's indictment was constitutionally deficient, this Court also relies upon standards for reviewing the sufficiency of an indictment. In syllabus point two, in part, of *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996), this Court explained that "[g]enerally, the sufficiency of an indictment is reviewed *de novo*." Our prior law provides guidance for this *de novo* review:

> "An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based." Syl. Pt. 3, *State v. Hall*, 172 W.Va. 138, 304 S.E.2d 43 (1983).

Syl. Pt. 1, *State v. Mullins*, 181 W.Va. 415, 383 S.E.2d 47 (1989).

9

Consistent with the holding in *Mullins*, this Court further explained in syllabus point two of *Miller,* 197 W.Va. at 593, 476 S.E.2d at 540, that "[a]n indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." *See also U.S. v. Law,* 2006 WL 2380655, at *3 (N.D. W.Va., Aug. 15, 2006) ("Ordinarily, an indictment that tracks the statutory language is sufficient."). With these standards in mind, this Court proceeds to determine whether the circuit court's grant of habeas corpus was in error.

### III. Discussion

In this appeal, Warden Ballard asserts that the circuit court improperly granted Mr. Dilworth habeas relief for alleged constitutional infirmities related to the indictment. As an initial and dispositive argument, Warden Ballard asserts that under *Miller*, Mr. Dilworth waived any challenge to his indictment by failing to timely raise the issue before the trial court. Alternatively, the Warden argues that under West Virginia Code § 62-2-10 (2010)[11] and *State v. David D. W.*, 214 W.Va. 167, 588 S.E.2d 156 (2003), the absence of specific dates in the indictment does not invalidate the charging document because time is not of the essence with regard to the crimes charged. As the Warden observes, Mr. Dilworth's

---

[11]West Virginia Code § 62-2-10 provides in relevant part that "no indictment or other accusation shall be quashed or deemed invalid . . . for omitting to state, or stating imperfectly, the time at which the offense was committed, when time is not the essence of the offense[.]"

confession and the victim's statements to law enforcement and trial testimony reflect that the crimes occurred during January through November of 2001. Warden Ballard emphasizes that under West Virginia Code § 62-2-11 (2010),[12] a conviction is not to be reversed based upon a challenge to the indictment if the "offense be charged therein with sufficient certainty for judgment to be given thereon . . . ." The Warden further argues that the circuit court's ruling vastly expands the Supreme Court's ruling in *Russell* and fails to explain how *Valentine*, a decision of the United States Court of Appeals for the Sixth Circuit, trumps our controlling state law in *David D. W.*

In contrast, Mr. Dilworth asserts that the circuit court correctly relied upon both *Valentine* and *Russell* in granting him habeas relief because his indictment violated his constitutional right to due process by failing to provide him with proper notice of the charges against him and also by failing to protect him from the issues of double jeopardy. Mr. Dilworth maintains that the circuit court correctly determined that *David D. W.* is not controlling because not only was it decided prior to *Valentine*, but it did not address identically-worded counts in an indictment in the context of due process. Mr. Dilworth further argues that while the circuit court considered the absence of specific dates in the

---

[12]As the Court explained in *State v. Casdorph*,159 W.Va. 909, 912, 230 S.E.2d 476, 479 (1976), "W.Va. Code, 62-2-11 (1923) [footnote omitted], cures any technical defect in an indictment when the indictment sufficiently apprises the accused of the charge which he must face."

11

indictment in its analysis, it ultimately ruled that the indictment was constitutionally deficient because the counts were worded identically and lacked factual information to differentiate one count from another. Lastly, relying upon *Miller*, Mr. Dilworth contends that his failure to object to the indictment prior to trial is not an absolute bar to this Court's review of the sufficiency of the indictment.

Having reviewed the parties' arguments on appeal, each of the bases of constitutional infirmity will be discussed. We begin our analysis by addressing *Russell*, the controlling case on federal due process[13] and double jeopardy[14] and one of the two cases primarily relied upon by the circuit court in granting habeas relief to Mr. Dilworth. In *Russell*, the United States Supreme Court set forth the criteria for measuring the constitutional sufficiency of an indictment, as follows:

> [F]irst, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprised the

---

[13]Under the Sixth Amendment to the U.S. Constitution, an accused "shall . . . be informed of the nature and cause of the accusation." Article III, section 14 of the West Virginia Constitution provides, in pertinent part, that "the accused shall be fully and plainly informed of the character and cause of the accusation."

[14]The Fifth Amendment to the U.S. Constitution provides that no person "shall . . . be subject for the same offense to be twice put in jeopardy of life or limb[,]" which is applied to the states through the Fourteenth Amendment. *See State v. McGilton*, 229 W.Va. 554, ___ n.8, 729 S.E.2d 876, 882 n.8 (2012) ("The Double Jeopardy Clause of the Fifth Amendment of the Constitution of the United States is applied to the states by the Fourteenth Amendment."). Parallel language is found in article III, section 5 of the West Virginia Constitution, which states that no person in any criminal case shall "be twice put in jeopardy of life or liberty for the same offense."

12

defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' *Cochran and Sayre v. United States,* 157 U.S. 286, 290; *Rose v. United States*, 161 U.S. 29, 34." *Hagner v. United States*, 285 U.S. 427, 431.

*Russell*, 369 U.S. at 763-64. In *Stroud v. Polk*, 466 F.3d 291 (4th Cir. 2006), the United States Court of Appeals for the Fourth Circuit addressed the manner in which the sufficiency of an indictment of a state prisoner in a habeas proceeding should be evaluated and, citing *Russell*, stated as follows:

In *Hartman*, we affirmed that "[e]lementary principles of due process require that an accused be informed of the specific charge against him," 283 F.3d at 194 (citing *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948)), and that " '[a] person's right to reasonable notice of a charge against him . . . [is] basic in our system of jurisprudence,' " id. (*quoting In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948)). Reasonable notice "sufficiently apprises the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) (internal quotation marks omitted) (evaluating indictment).

466 F.3d at 296; *see also U.S. v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) ("[a]n indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." (citations omitted)).

13

This Court previously applied *Russell* in addressing the sufficiency of an indictment and stated:[15]

> An indictment is bad or insufficient . . . when within the four corners of the indictment it: (1) fails to contain the elements of the offense to be charged and sufficiently apprise the defendant of what he or she must be prepared to meet; and (2) fails to contain sufficient accurate information to permit a plea of former acquittal or conviction. *Russell v. United States*, 369 U.S. 749, 763-64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240, 250-51 (1962).

*State ex rel. Forbes v. Canady*, 197 W.Va. 37, 41, 475 S.E.2d 37, 41 (1996), *superseded by rule on another point of law*, *State v. Hartman*, No. 11-0784, 2012 WL 5897494 (W.Va. 2012). Moreover, in syllabus point five of *State v. Haines*, 221 W.Va. 235, 654 S.E.2d 359 (2007), this Court held:

> "An indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W.Va. R.Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy." Syl. Pt. 6, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999).

---

[15]"The sufficiency of an indictment is determined by looking to the law of the state where the indictment issued." *Dilworth v. Markle*, 2009 WL 5874321, at *6 (N.D. W.Va. Sept. 2, 2009).

14

As we explained in *Miller*, "the sufficiency of an indictment is determined by practical rather than technical considerations."[16]  Further, an indictment is sufficient if it substantially follows the language of the statute under which the defendant is charged, fully informs the accused of the particular offense with which he is charged, and allows this Court to determine the statute on which the charge is based.  Syl. Pt. 1, *Mullins*, 181 W.Va. at 416, 383 S.E.2d at 48.[17]

Having addressed *Russell*, the controlling decision of the United States Supreme Court on determining the sufficiency of indictments, as well as this Court's similar

---

[16]Syl. Pt. 2, in part, *Miller,* 197 W.Va. 588, 476 S.E.2d 535.

[17]As indicated previously, Warden Ballard argues that *State v. David D. W.*, 214 W.Va. 167, 588 S.E.2d 156, is controlling in the case *sub judice*.  In *David D. W.*, the defendant asserted that his 206-count indictment on various sex crimes, including multiple counts of sexual abuse by a parent, guardian, or custodian, was insufficient because it lacked specific dates in the various counts; it was not "plain, concise, or definite[;]" the number of charges was determined arbitrarily; and, that as a result, "he was not able to adequately prepare a defense."  *Id.* at 172, 588 S.E.2d at 161.  The defendant D.W. also argued that "it would be impossible for him to plead his convictions as a bar to a later prosecution, since the State could draft a new indictment alleging the same offense occurred on one of the days of the month not alleged in the previous indictment."  214 W.Va. at 173, 588 S.E.2d at 162.  This Court disagreed and concluded, relying upon West Virginia Code § 62-2-10 (1923), which provides that an indictment shall not be deemed invalid for failing to state, or stating imperfectly, the time at which the offense was committed, when time is not of the essence of the offense, that because time is not an element of the sexual crimes charged, the indictment was sufficient.  *Id.* at 173, 588 S.E.2d at 162; *see also State v. Miller*, 195 W.Va. 656, 664, 466 S.E.2d 507, 515 (1995) ("Because time is not an essential element of the charged offenses [sexual assault] . . .  the defendant "was not exposed to the danger of being put in jeopardy to the same offenses.").  Based on *David D. W.*, this Court finds that the absence of specific dates in Mr. Dilworth's indictment did not make it deficient because time is not an essential element of the sex crimes charged.

15

precedent applying *Russell*, the Court now turns to its discussion of *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), the primary case relied upon by the circuit court in granting habeas relief to Mr. Dilworth.

In *Valentine*, the United States Court of Appeals for the Sixth Circuit addressed a constitutional challenge to an indictment in a habeas proceeding brought by a state prisoner. The indictment contained twenty identically worded counts of "child rape" and twenty identically worded counts of felonious penetration occurring over a ten-month period. *Valentine*, 395 F.3d at 628. The habeas defendant in *Valentine* sought a bill of particulars prior to trial in part because he had alibi defenses for portions of the period covered by the indictment. The bill of particulars failed to offer any differentiation between the counts. *Id.* at 629. In addition, the eight-year-old victim's trial testimony was vague. The *Valentine* Court relied upon *Russell* to grant habeas relief to Valentine. The *Valentine* Court concluded that Valentine's indictment charging multiple, identically worded counts violated constitutional due process in two respects: the indictment failed to provide him with notice of the multiple incidents for which he was tried and convicted and the lack of specificity in the indictment and the trial record subjected him to double jeopardy.

This Court agrees with Warden Ballard that *Valentine* is not binding upon this Court.[18] As pointed out by the dissent in *Valentine*, "no [U.S.] Supreme Court case has ever found the use of identically worded and factually indistinguishable indictments *unconstitutional*." *Valentine*, 395 F.3d at 639 (Gilman, J., dissenting) (emphasis in original). Warden Ballard correctly observed that in *Renico v. Lett*, __ U.S. __, 130 S.Ct. 1855 (2010), the United States Supreme Court held that it is error for federal circuit courts to rely on any decisions other than Supreme Court precedent when analyzing a state court's application of "controlling" federal precedent for purposes of state prisoner federal habeas proceedings. This may explain why this Court could find no other federal circuit court of appeals that had followed *Valentine* to grant habeas relief to a state prisoner under similar circumstances.[19]

---

[18]Recently, in *State v. Samuel S.*, No. 11-0877, 2012 WL 5471448 (W.Va. Nov. 9, 2012) (memorandum decision), this Court addressed a challenge to the sufficiency of an indictment that charged the defendant with 140 counts of sexual offenses, many of which were identical and all of which involved his young daughter over a ten-year period. We found the petitioner's reliance on *Valentine* to be misplaced and determined that the indictment met the minimum guidelines for charging documents by setting forth the elements of the offense charged and by giving the petitioner fair notice of the charges against which he must defend by providing the year, the nature of the offense, and the identity of the victim.

[19]In a recent decision issued by the United States District Court for the Northern District of West Virginia, the court addressed a state prisoner's claim that his indictment violated his constitutional rights under *Russell* and *Valentine* because the counts failed to set forth a specific date and failed to distinguish between the alleged sexual conduct. *May v. Ballard*, 2012 WL 4356794 (N.D. W.Va.). The district court denied habeas relief and found *Valentine* to be distinguishable based on the evidence at trial regarding the incidents occurring during the time frame in the indictment, including distinguishing between prior bad acts versus those charged in the indictment. Based on this distinction of which acts were at issue, the district court found that this demonstrated that Mr. May's due process rights were not violated as he was provided with adequate notice of the charges against him and was
(continued...)

17

In fact, the Sixth Circuit rarely cited *Valentine*[20] prior to *Renico* and has not cited it since *Renico*.

Further, there are several, significant distinctions between the case at bar and *Valentine*. In *Valentine*, the petitioner challenged the adequacy of his indictment by seeking a bill of particulars prior to trial. He contended that the lack of specific dates and times in his indictment prejudiced him because he had alibi defenses. Unlike Mr. Dilworth, the petitioner in *Valentine* did not confess to the crimes charged, and the victim's trial testimony was vague. In stark contrast, Mr. Dilworth confessed pre-trial and that confession, which described his sexual abuse of the victim, was read into evidence at trial. Critically, his confession was consistent with the victim's trial testimony regarding the acts of sexual abuse at issue and the year the alleged offenses occurred.[21] Mr. Dilworth never sought a bill of

---

[19](...continued)
protected from double jeopardy concerns. *Id.* at *13-14. This same reasoning applies to the instant case where the victim testified at trial concerning Mr. Dilworth's prior bad acts against her, which were distinguished at trial from the sexual abuse occurring in 2001, as charged in Mr. Dilworth's indictment.

[20]In *State of Ohio v. Stefka*, 973 N.E.2d 786 (Ohio Ct. App. 2012), the court explained that the Sixth Circuit has cited *Valentine* only four times, three of which were unpublished decisions and none of which reversed a conviction based upon *Valentine*. *See Shafer v. Wilson*, 364 F.App'x 940 (6th Cir. 2010); *Cowherd v. Million*, 260 F.App'x 781 (6th Cir. 2008); *U.S. v. Madison*, 226 F.App'x 535 (6th Cir. 2007); *Joseph v. Coyle*, 469 F.3d 441 (6th Cir. 2006).

[21]As was the case in *David D. W.*, "it is likely that the jury found that the appellant's recorded statement corroborated the victim's testimony." *David D. W.*, 214 W.Va. at 176,
(continued...)

18

particulars,[22] and he did not assert an alibi defense. Moreover, unlike the young victim in *Valentine*, here, the victim was a young adult by the time of Mr. Dilworth's trial and she testified at length concerning the sexual abuse perpetrated upon her by Mr. Dilworth.

Additionally, the evidence presented in Mr. Dilworth's trial demonstrated, unlike in *Valentine*, that there were more instances of the crimes than were actually charged—not fewer.[23] Based on this Court's review of the evidence at trial, including the victim's extensive trial testimony, as well as Mr. Dilworth's confession wherein he admitted that he had sexually abused the victim more times than he could count, it is arguable that Mr. Dilworth was undercharged.[24] Consequently, in marked contrast to *Valentine*, this Court

---

[21](...continued)
588 S.E.2d at 165.

[22]A bill of particulars is a discovery device in criminal proceedings. It appears to this Court that Mr. Dilworth did not seek a bill of particulars because he was satisfied with the indictment and that he was fully advised of the charges against him. *See State of Missouri v. Walker*, 795 S.W.2d 522, 526 (1990) ("[S]ince Walker failed to request a bill of particulars, this court is entitled to assume he was satisfied with the information and that it fully advised him of the facts charged."(citations omitted)).

[23]The Court in *Valentine* noted that the Ohio Court of Appeals concluded, in Mr. Valentine's direct criminal appeal, that Mr. Valentine was convicted of twenty counts of felonious sexual penetration based upon evidence that demonstrated only fifteen, which likely subjected him to a double jeopardy violation.

[24]If the State of West Virginia were to charge Mr. Dilworth with similar crimes against this victim and allege that the crimes occurred in 2001, there is nothing that would prevent Mr. Dilworth from asserting double jeopardy in connection with these later charged, similar offenses. *Accord Valentine*, 395 F.3d at 642 (Gilman, J., dissenting) ("*Russell*, read literally
(continued...)

19

finds there was no possibility that Mr. Dilworth was convicted on ten counts with evidence supporting fewer than those ten offenses. To the contrary, this Court is convinced from its review of the trial court's instructions to the jury[25] and the evidence at trial that the jury found separate and independent evidence to support its conviction of Mr. Dilworth on each and every count of the indictment.

Given the significant differences between the case at bar and *Valentine*, and based upon this Court's well-established law on the sufficiency of indictments, we find *Valentine* to be both unpersuasive and non-governing. Imminently better reasoned is the dissenting opinion in *Valentine*, with its insightful explanation that "prohibiting the use of multiple identical charges in a single indictment would severely hamper a state's ability to prosecute crimes where a young child is both the victim and the sole witness." 395 F.3d at 640. Indeed, "[u]nder a rule restricting prosecutions to exceedingly narrow and precise charges, a sex-abuse charge would presumptively be limited to a single instance of abuse,

---

[24](...continued)
. . . clearly protects the defendant *in the future*, so that the current record may demonstrate 'with accuracy' a 'former acquittal or conviction.'. . . It does not, as the majority suggests, serve to protect defendants from multiple identical counts contained within the same indictment.").

[25]The trial transcript reveals that the trial court repeatedly instructed the jury that it had to find a "separate, independent act to support . . . each count based upon the evidence as presented. . . ." After the jury returned its verdict finding Mr. Dilworth guilty on all ten counts of the indictment, the trial court polled the jury and each juror answered in the affirmative when asked if the verdict reached was his/her verdict.

despite clear evidence of multiple occasions . . . . Such an outcome is contrary to judicial precedent and is not constitutionally required." *Id*. at 641.

Construing Mr. Dilworth's indictment in favor of validity, as this Court is required to do under *Miller*,[26] we conclude that the indictment is constitutionally sufficient under both *Russell* and our existing state law. Mr. Dilworth knew the elements of the offenses with which he was charged and had fair notice of what he had to defend against (particularly given his confession and the victim's pretrial statements to law enforcement in which she described the sexual abuse perpetrated upon her by Mr. Dilworth). The indictment also gave Mr. Dilworth proper notice by identifying the victim, the offenses committed, and the year the offenses were committed. Because the indictment substantially followed the language of the statute under which Mr. Dilworth was charged,[27] he was informed of the nature of the alleged offenses and the statute under which those offenses were charged. In short, had Mr. Dilworth desired more information beyond the victim's pre-trial statements to law enforcement and beyond his own confession, he could have requested a bill of particulars or otherwise sought relief from the trial court.[28] As such, the circuit court abused

---

[26]*See* note 28, *infra*.

[27]West Virginia Code §61-8D-5(a).

[28]As we previously noted, Warden Ballard asserted that Mr. Dilworth never challenged the constitutional sufficiency of the indictment either prior to or during his trial. Although during oral argument, Mr. Dilworth's counsel stated that he had challenged the
(continued...)

21

indictment on the basis of the identical charging language in his motion for acquittal at trial, the trial transcript does not support such argument.

Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure provides that "[d]efenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings)" must be raised prior to trial. Rule 12(f) provides that the "[f]ailure by a party to raise defenses or objection or to make request which must be made prior to trial . . . may constitute waiver thereof, but the court for cause shown should grant relief from the waiver." This Court has previously held:

> Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure requires that a defendant must raise any objection to an indictment prior to trial. Although a challenge to a defective indictment is never waived, this Court literally will construe an indictment in favor of validity where a defendant fails timely to challenge its sufficiency. Without objection, the indictment should be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense under West Virginia law or for which the defendant was convicted.

*Miller,* 197 W.Va. at 592-93, 476 S.E.2d at 539-40, Syl. Pt. 1. More recently, in syllabus point two of *State v. Tommy Y., Jr.*, 219 W.Va. 530, 637 S.E.2d 628 (2006), this Court stated that

> [f]or the purposes of Rule 12(b)(2) and Rule 12(f) of the West Virginia Rules of Criminal Procedure, if a defect in a charging instrument does not involve jurisdiction or result in a failure to charge an offense, a defendant must raise the issue prior to trial or the defect will be deemed waived absent a showing of good cause for failing to timely raise the issue.

These rules, this Court's opinions interpreting these rules, and West Virginia Code § 62-2-11 (*see* note 12, *supra*) all promote judicial economy, while simultaneously protecting the interests of justice. They also prevent a criminal defendant from failing to raise an issue in a timely fashion either as trial strategy or to preserve a basis for a subsequent collateral challenge to his conviction. Because Mr. Dilworth's challenge to his indictment does not involve jurisdiction and because his indictment is not "so defective that it does not, by any reasonable construction, charge an offense under West Virginia law," Mr. Dilworth must be

(continued...)

22

its discretion in granting habeas relief to Mr. Dilworth.

## IV. Conclusion

In view of the foregoing, this Court concludes that Mr. Dilworth was not denied due process because he was provided with adequate notice of the charges against him and was not convicted in violation of double jeopardy principles. For all of these reasons, this Court finds that the circuit court abused its discretion in granting habeas relief to Mr. Dilworth and in setting aside nine of his ten convictions. Accordingly, the order of the Circuit Court of Gilmer County is reversed and Mr. Dilworth is to remain imprisoned under the sentencing order entered in the underlying criminal proceeding.

Reversed.

---

[28](...continued)
able to show good cause for failing to timely raise the issue. To that end, there is nothing in either the appendix record, Mr. Dilworth's appellate brief, or his counsel's oral argument before this Court that would constitute "good cause" for not having timely raised the issue. Thus, in addition to not being entitled to habeas relief under *Valentine*, Mr. Dilworth was not entitled to habeas relief because he waived the issue of alleged infirmities in the indictment by failing to follow our law in timely raising the issue prior to trial.