**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

State of West Virginia,
Plaintiff Below, Respondent,

vs)  No. 14-0889 (Gilmer County 12-F-26)

Robert H.,
Defendant Below, Petitioner.

**FILED**
**November 10, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Robert H.,[1] by counsel, Matthew Brummond, appeals from the August 4, 2014, order entered by the Circuit Court of Gilmer County, West Virginia, denying his motions to dismiss forty-three counts of a sixty-three count indictment and to grant him a new trial, and sentencing petitioner to an effective sentence of 112 to 145 years in prison. The sentence is based upon petitioner's jury conviction on sixty-three counts[2] relating to sexual assault, sexual abuse, sexual abuse by a parent, guardian, custodian or person in a position of trust, and attempted sexual abuse by a parent, guardian, custodian or person in a

---

[1]Pursuant to West Virginia Rule of Appellate Procedure 40(e), we identify both petitioner and the child victims in this case by their initials. *See also State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990) (stating that "[c]onsistent with our practice in cases involving sensitive matters, we use the victim's initials. Since, in this case, the victims are related to the appellant, we have referred to the appellant by his last name initial. *See Benjamin R. v. Orkin Exterminating Co.*, 182 W. Va. 615, 390 S.E.2d 814 n. 1 (1990) (citing *In re Jonathan P.*, 182 W. Va. 302, 303, 387 S.E.2d 537, 538 n. 1 (1989)); *State v. Murray*, 180 W. Va. 41, 44, 375 S.E.2d 405, 408 n. 1 (1988).").

[2]Also included in the sixty-three counts was a misdemeanor count of providing alcohol to a minor in violation of West Virginia Code § 60-3A-24(c) and a misdemeanor count of making harassing phone calls in violation of West Virginia Code § 61-8-16(a)(4).

1

position of trust of both petitioner's daughter, A.H., and her friend, J.B.[3] Respondent, by counsel J. Zak Ritchie and Thomas M. Johnson, Jr., filed a response to which petitioner replied.[4] We note at the outset that petitioner does not challenge any of his convictions for sexually assaulting J.B. and A.H., sexually abusing J.B. and A.H., or providing alcohol to J.B.[5]

Petitioner raises the following assignments of error: 1) the indictment alleged a bare solicitation in support of the attempted sexual abuse by a parent counts and, therefore, he was deprived of the constitutionally required notice because a solicitation is an insufficient overt act to support an attempt charge; 2) the proof at trial offered by respondent went beyond the bare solicitation noticed in the indictment to include the allegation that petitioner tried to physically direct A.H. to the bedroom, thereby creating a fatal variance to the indictment which prejudiced petitioner; 3) the indictment charged petitioner with "Making Harassing Telephone Calls During which Conversation Ensues," West Virginia Code § 61-8-16(a)(4), but alleged as a factual predicate that he only left text and voicemail messages, conduct that the statute does not prohibit;[6] and 4) the evidence introduced at trial was insufficient to

---

[3]*See* W. Va. Code § 61-8B-4(a)(1) (pertaining to sexual assault in second degree); § 61-8D-5(a) (pertaining to sexual abuse by parent, guardian, custodian or person in position of trust or attempt thereof and sometimes referred to herein as "attempted sexual abuse by a parent"); § 61-8B-7(a)(1) (pertaining to sexual abuse in first degree).

[4]Respondent initially filed a summary response. Given the poor quality of that response, this Court, by order entered on April 6, 2016, directed respondent to file "a new respondent's brief which include[d] some modicum of legal reasoning and accurate and complete citations to the record and relevant law[.]" Respondent complied with this directive and petitioner filed a second reply brief in response.

[5]Based upon the remaining counts in the indictment upon which petitioner stands convicted, and none of which petitioner challenges on appeal, petitioner maintains that he will remain sentenced to approximately 82 to 185 years in prison if the Court reverses his convictions on all the counts he challenges.

[6]Petitioner did not challenge count 10 regarding making harassing telephone calls to J.B. in violation of West Virginia Code § 61-8-16(a)(4) below and raises this issue for the first time on appeal. Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure provides that pretrial motions that *"must be raised prior to trial*[,]" include "[d]efenses and objections based on defects in the indictment or information. . . ." (Emphasis added). Further, we held in syllabus point one of *State v. Miller*, 197 W. Va. 588, 476 S.E.2d 535

(continued...)

2

convict petitioner of ten of the counts alleging attempted sexual abuse by a parent and two counts involving first degree sexual abuse and sexual abuse by a parent for petitioner allegedly touching his daughter's breasts.

Upon review of the parties' briefs and oral arguments, the appendix record including supplements thereto, and the pertinent authorities, we affirm the circuit court, in part, and reverse, in part, on the grounds that there was insufficient evidence to convict petitioner for eight[7] of the counts charging attempted sexual abuse by a parent, as well as two counts involving first degree sexual abuse and sexual abuse by a parent based upon allegations that petitioner touched his daughter's breasts. This case is remanded so that the circuit court can resentence petitioner consistent with this memorandum decision.

This case does not present a new or significant question of law, and, therefore, it is properly disposed of through this memorandum decision. For the errors upon which we reverse, the "limited circumstance" requirement of Rule 21(d) of the Rules of Appellate Procedure is satisfied. As for the remaining assigned errors upon which we affirm, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21.

---

[6](...continued)
(1996):

> Rule 12(b)(2) of the West Virginia Rules of Criminal Procedure requires that a defendant must raise any objection to an indictment prior to trial. Although a challenge to a defective indictment is never waived, this Court literally will construe an indictment in favor of validity where a defendant fails timely to challenge its sufficiency. Without objection, the indictment should be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense under West Virginia law or for which the defendant was convicted.

*Accord* Syl. Pt. 6, *State v. Chic-Colbert*, 231 W. Va. 749, 749 S.E.2d 642 (2013). In light of the foregoing standard of review, we find that this count in the indictment was not "so defective that it does not, by any reasonable construction, charge an offense under West Virginia law or for which the defendant was convicted." *Miller*, 197 W. Va. at 592-93, 476 S.E.2d at 539-40. Consequently, we find no merit to petitioner's assignment of error concerning this count in the indictment.

[7]*See infra* notes 8 and 9.

## I. Indictment/Motions to Dismiss

In the instant appeal petitioner challenges counts 11 through 40 and 54 through 63[8] contained within the indictment returned against him on November 9, 2012.[9] Each of these counts charged petitioner with attempted sexual abuse of a child by a parent under West Virginia Code § 61-8D-5(a). Petitioner argued below and now before this Court that there was nothing alleged about an overt act in these counts charging attempted sexual abuse, which is a necessary element for any attempt count, making the indictment insufficient. *See* Syl. Pt. 1, *State v. Burd*, 187 W. Va. 415, 419 S.E.2d 676 (1991) ("In order to constitute the crime of attempt, two requirements must be met: (1) a specific intent to commit the underlying substantive crime; and (2) an overt act toward the commission of that crime, which falls short of completing the underlying crime." Syl. Pt. 2, *State v. Starkey*, 161 W. Va. 517, 244 S.E.2d 219 (1978).").

Petitioner moved to dismiss the indictment as being insufficient due to the numerous similar, but separate, counts of sexual abuse committed over a period of several months.[10] Subsequent to this motion being filed below, this Court issued *Ballard v. Dilworth*, 230 W. Va. 449, 739 S.E.2d 643 (2013). In *Dilworth*, we found that an indictment containing ten identically worded and factually indistinguishable counts of sex abuse by a guardian to be

---

[8]Petitioner's challenge to count 11 and count 54 of the indictment is without support. Both counts allege that petitioner either committed or attempted to commit sexual abuse by a parent in violation of West Virginia Code § 61-8D-5(a). Neither of these two counts was subject to the motion to dismiss the indictment that petitioner filed after respondent provided its bill of particulars. Moreover, the additional language provided by respondent regarding count 11 as part of the bill of particulars was that "[d]efendant undressed in the presence of his fourteen (14) year old daughter, grabbed her hand and attempted to place her hand on his penis[]" undeniably sets forth an overt act. A.H.'s trial testimony supported the allegations in this count. Further, in the bill of particulars, respondent added the following language to count 54: "Defendant did, on or about the 26th day of June, 2012, in the marital bedroom, forcibly, against his daughter's protests, penetrate his daughter's vagina with his penis." Our review of the trial transcript demonstrates that A.H.'s testimony supported the allegations contained in both count 11 and 54. As such, the jury's conviction on these two counts will not be disturbed on appeal.

[9]Accordingly, at issue in this appeal are thirty-eight counts out of sixty-three counts in the indictment that concern the attempt to commit sexual abuse by a parent.

[10]In this motion to dismiss, petitioner raised no argument regarding the sufficiency of the attempt counts on the basis that those counts lacked allegations of overt acts.

4

constitutionally sufficient. *Id.* at 458-59, 739 S.E.2d at 652-53. Consequently, the circuit court determined, based upon *Dilworth*, that no counts in the indictment should be dismissed.

Thereafter, petitioner moved for a bill of particulars, requesting respondent to identify the specific acts committed by him that supported counts in the indictment. Respondent filed a bill of particulars, wherein a copy of each count in the indictment was provided with certain additional language italicized. In pertinent part, for counts 12 through 40, respondent provided a copy of each respective count from the indictment and then added the following language: "*Defendant pled with his minor daughter to have intercourse with him.*" Concerning counts 55 through 63, the respondent produced copies of each count as they appeared in the indictment and then added the language: "*Defendant relentlessly, continually and insistently pursue[d] sexual intercourse by verbal proposition to his daughter.*"

Petitioner filed a second motion to dismiss the indictment on June 21, 2013. In this motion, petitioner argued, in relevant part, that counts 12 through 40 and 55 through 63 should be dismissed because "the description of events does not meet the elements of the offense charged in that the allegations is [sic] that the Defendant requested the contact verbally but took no action to attempt the contact." The circuit court denied the motion, finding that: 1) the indictment set forth the statutory language and was sufficient to apprise petitioner of the crimes charged; and 2) the issues regarding the attempt counts were best addressed at the close of respondent's evidence. The court stated: "[T]he statute says attempt and i[t] becomes a question of fact for the jury, if the jury believes that, in fact, he proposition[ed] the victims . . . and whether or not that is an attempt within the statute. The jury will be adequately instructed. The [c]ourt will consider that argument once I hear the evidence."[11]

## II. Facts

The evidence offered during petitioner's two-day jury trial was that on the evening June 30, 2012, J.B., who was a friend of petitioner's daughter, A.H., spent the night with A.H. in petitioner's home where A.H. also lived. There was no electricity in the house that evening because of a recent storm.[12] Also, J.B. testified that she had no cell service because of the storm. According to J.B.'s testimony, petitioner provided alcohol to both girls and they

___

[11]The trial was continued until March of 2014 when petitioner's trial counsel moved to withdraw and the circuit court appointed a new attorney for petitioner. Petitioner's new counsel also moved the circuit court to dismiss the attempt counts on the same grounds already decided by the circuit court. Thus, the circuit court again denied the motion.

[12]J.B. testified that the storm was the derecho that had moved through West Virginia.

became very intoxicated. Eventually A.H. went to her bedroom for the night and J.B. slept on the couch in the living room.

J.B. testified that around 1:00 a.m. petitioner came into the living room and "rolled . . . [J.B.] over and said seductive things" to her. J.B. said that she told petitioner no "several times and he said he wouldn't take no as an answer." Petitioner eventually started touching J.B., including in her "privates," which J.B. said meant her vagina. J.B. testified that petitioner began taking her shorts off and "then he inserted his finger in me." This encounter occurred over a ten minute period. Petitioner left the living room.

J.B. kept checking her cell phone for service so that she could call home, but her phone continued to be without service. Around 3:00 a.m., J.B. testified that petitioner came back into the living room. J.B. stated that she was awakened to petitioner taking off her shorts again. "I told him to go back to bed where his wife was and to leave me alone and I told him to stop[.]" J.B. stated that he penetrated her digitally again and placed her hand on his penis, despite her repeatedly telling him "no."

Petitioner again left the room only to return a third time. J.B. begged him to leave her alone. This time petitioner forced J.B. to kiss him by forcing himself on her.

The next day, J.B. testified that she was scared and did not know "who to tell or how to explain it because I was embarrassed, so I didn't tell anybody." A.H., not knowing the events J.B. experienced the night before, "begged" J.B. to stay with her again. This second night, the two girls went to A.H.'s room and locked the doors. J.B. testified that she felt that something was wrong with A.H. J.B. also testified that A.H. "seemed scared." According to J.B., A.H. had not told her anything about her father's actions towards A.H. at that point.

J.B. testified that petitioner did not physically abuse her again. She stated, however, that he pursued her by sending her text messages and calling her on her cell phone and leaving her voicemail messages. The evidence introduced at trial showed that petitioner sent J.B. about 111 text messages and left twelve voicemail messages. J.B. testified that she responded to one of petitioner's text messages and told him that if he sent her another message, she would tell her father. Petitioner continued sending text messages to J.B.

J.B. testified that on July 5, 2012, petitioner, who had been stalking her, came into the weight room at her high school where she was lifting weights. He came into the room three times, asking her to leave with him and she would not leave with him. At this point, J.B. told a fellow student, who was in the weight room at the time petitioner came into the room. J.B. and her classmate then went to the classmate's mother, who was a teacher at the school. The teacher then informed J.B.'s mother and petitioner's conduct was reported to the West

6

Virginia State Police.

Corporal Robert Smith with the West Virginia State Police testified that he investigated the allegations made by J.B., which resulted in the police obtaining an arrest warrant for petitioner and a search warrant for petitioner's residence on July 6, 2012. The State Police arrested petitioner. As a result of the State Police executing the search of petitioner's home, Corporal Smith encountered A.H. Corporal Smith testified that A.H. came out of her bedroom looking "like a scolded dog. You know, like when you whip a dog, her head was down, she didn't want to make eye contact with us." Corporal Smith stated that he had a "gut feeling that there was something more here." Corporal Smith testified that he spoke with A.H. on three occasions.[13]

A.H. testified at trial and stated that going back to 2011, when she and her family lived in Cedarville, West Virginia, petitioner would proposition her to have sex. A.H. testified: "I'd just be doing stuff around the house or I would be doing chores and he would come up to me and ask me if I wanted to have fun or if I wanted to go do something or he had something to show me." A.H. testified that she came to understand that what petitioner meant was that "[h]e wanted to have sex."[14]

A.H. stated that between 2011 through February 14, 2012, while they were living in Cedarville, petitioner propositioned her "nine or ten times." In February 14, 2012, petitioner and his family moved to Glenville, West Virginia. A.H. testified that her father continued to proposition her "to have sex, have fun, show you something[]" in their new home. According to A.H., petitioner's propositioning of her occurred, "double" the number of times that occurred in Cedarville. She stated "[a]t least double that again, 20 times and many more. I don't know, just over and over." During cross-examination of A.H., however, petitioner's attorney asked A.H.: "That you had had . . . [petitioner] proposition you for sex at least 30, 40 times in Cedarville and Glenville from June of '11 up until July of – July 5th of 2012, is that fair to say?" A.H. responded: "Approximately 30 times, yeah."

There was also detailed testimony from A.H. that in June of 2012 petitioner raped her in their Glenville home. A.H. also testified to other occasions when her father touched her sexually while they lived in Glenville. Petitioner threatened his daughter to keep quiet about

---

[13]Corporal Smith testified that he spoke with A.H. briefly that night and again the next day. The third statement was obtained on July 25, 2012.

[14]A.H. also testified that petitioner "would grab my arm and try to tug me towards the bedroom." Her testimony, however, was unclear as to whether this occurred every time he propositioned her.

7

the sexual abuse and rape, otherwise A.H. "would wreck the family and ruin his marriage."

At the close of the State's case, petitioner moved for a judgment of acquittal on the attempt counts. Petitioner did not testify and did not offer any evidence on his behalf. After deliberating, the jury returned a verdict convicting petitioner of all sixty-three counts in the indictment.

Petitioner filed a post-trial motion to dismiss forty counts alleged in the indictment pertaining to the attempted sexual abuse by a parent. Further, he moved to set aside the verdict and to grant him a new trial on the basis that the circuit court improperly allowed the attempt counts to go to the jury, because they were not supported by an overt act. The circuit court heard the motions at the sentencing hearing and denied both motions. The circuit court imposed an effective sentence of 112 to 145 years for the sixty-three counts. This appeal followed.

### III. Discussion

We begin by addressing whether the allegations set forth in the indictment are sufficient to support the attempted sexual abuse by a parent counts. *See* W. Va. Code § 61-8D-5(a). Petitioner argues that "a bare solicitation[15] is an insufficient overt act to support a charge of attempted sexual abuse by a parent." (Footnote added). According to petitioner, the indictment "failed to notify" him concerning those counts. As petitioner argues, the allegation charging him "with attempting to sexually abuse A.H. by 'propositioning'" her failed to put him on notice because "conduct which would have been a mere solicitation at common law cannot be an overt act towards an attempt." Respondent counters that the counts charging petitioner with attempted sexual abuse by a parent were constitutionally sufficient. We agree.

---

[15]At first glance, petitioner's argument suggests that he could have been charged with solicitation. Petitioner expressly maintains, however, that his argument is not that respondent charged him with the wrong crime, "but rather that it did not supply sufficient factual allegations to sustain the crime it did charge." Respondent could not have charged petitioner with solicitation as set forth in West Virginia Code § 61-11-8a (setting forth elements of solicitation to commit certain felonies). The solicitation statute is very specific as to the crimes for which there can be solicitation and sexual abuse by a parent, West Virginia Code § 61-8D-5(a), is not one of those crimes subject to West Virginia Code § 61-11-8a. *But see* W. Va. Code § 61-3C-14b (relating to soliciting minor via computer and soliciting minor and traveling to engage minor in prohibited sexual activity).

This Court previously held in syllabus point two of *Miller* that "[g]enerally, the sufficiency of an indictment is reviewed *de novo*. An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." 197 W. Va. at 593, 476 S.E.2d at 540, Syl. Pt. 2. As we held in syllabus points three and four of *Dilworth*:

> "'An indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based.' Syl. Pt. 3, *State v. Hall*, 172 W. Va. 138, 304 S.E.2d 43 (1983)." Syl. Pt. 1, *State v. Mullins*, 181 W. Va. 415, 383 S.E.2d 47 (1989).

> "'An indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W. Va. R. Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy.' Syl. Pt. 6, *State v. Wallace*, 205 W. Va. 155, 517 S.E.2d 20 (1999)." Syl. Pt. 5, *State v. Haines*, 221 W. Va. 235, 654 S.E.2d 359 (2007)."

*Dilworth*, 230 W. Va. at 449, 739 S.E.2d at 644, Syl. Pts. 3 and 4.

The statute at issue is West Virginia Code § 61-8D-5(a), which provides, in relevant part:

> If any parent, guardian or custodian of or other person in a position of trust in relation to a child under his or her care, custody or control, shall engage in or *attempt to engage* in sexual exploitation of, or *in sexual intercourse, sexual intrusion or sexual contact with, a child under his or her care, custody or control*, . . . then such *parent*, guardian, custodian or person in a position of trust shall be guilty of a felony and, upon conviction thereof, shall be imprisoned in a correctional facility not less than ten nor more than twenty years. . . .

(Emphasis added).

9

We have held that an attempt to commit a crime requires both criminal intent to commit the underlying crime and an overt act toward the commission of that crime. *See Burd*, 187 W. Va. at 415, 419 S.E.2d at 676, Syl. Pt. 1.[16] Thus, in this case, there must be an overt act toward the commission of sexual abuse by a parent. *Id.*

From our review of the appendix record, the counts at issue involving the attempted sexual abuse by a parent of A.H. track the language of West Virginia Code § 61-8D-5(a), set forth the elements of the offense charged, place petitioner on fair notice of the charges against which he must defend and enable him to assert an acquittal or conviction in order to avoid double jeopardy. *See Dilworth*, 230 W. Va. at 449, 739 S.E.2d at 644, Syl. Pt. 3.

Moreover, the crux of petitioner's position is that the "propositioning" or "solicitation" of his daughter amounts to nothing more than simple words that fail to satisfy the overt act requirement for attempt. To trivialize petitioner's conduct in this case to nothing more than words would be disingenuous at best. Rather, the petitioner's overt acts within the context of a father and minor daughter relationship where he repeatedly tried to lure his daughter to engage in numerous sexual encounters with him are sufficient to establish the elements of the crimes charged.[17] We therefore affirm the circuit court's decision to deny the motion to dismiss these counts.

Next, we address whether respondent failed to introduce sufficient evidence to convict petitioner of ten counts of attempted sexual abuse by a parent and two counts of first degree sexual abuse and abuse by a parent for touching A.H.'s breasts. Petitioner argues that the

---

[16]Petitioner also relies upon *State v. Baller*, 26 W. Va. 90 (1885). In *Baller*, in resolving the issue of whether an indictment was sufficient to charge the crime of attempt to obstruct and impede the administration of justice at common law, we acknowledged under common law that "mere solicitations to commit a crime" would not make "a party indictable for an attempt to commit" a crime. *Id.* at 101. As *Baller* was decided under the common law it is easily distinguishable from the instant matter and we therefore decline to rely upon it.

[17]Because we find that petitioner's conduct alleged in the indictment was sufficient to support the attempted sexual abuse counts by a parent challenged by petitioner, we need not address petitioner's assigned error of whether the evidence offered at trial that petitioner physically directed petitioner towards his bedroom created a fatal variance and prejudiced petitioner. *See* Syl. Pt. 3, *State v. Corra*, 223 W. Va. 573, 575, 678 S.E.2d 306, 308 (2009) ("'A conviction based upon evidence that varies materially from the charge contained in the indictment cannot stand and must be reversed.' Syllabus Point 3, *State v. Nicholson*, 162 W. Va. 750, 252 S.E.2d 894 (1979), *overruled on other grounds by State v. Petry*, 166 W. Va. 153, 273 S.E.2d 346 (1980).").

evidence at trial supports only thirty counts of attempted sexual abuse, not the forty for which he stands convicted. Further, he argues that there was no evidence to support his conviction for the counts involving the touching of his daughter's breasts.

We are guided by the following standard of review in our examination of this issue:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). We also held in syllabus point three of *Guthrie*:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part.

Based upon our review of the record, A.H. testified that her father attempted to sexually abuse her thirty times. Specifically, A.H. testified that her father attempted to sexually abuse her "[n]ine or ten times[]" at the Cedarville home and then "[a]t least double that again, 20 times and many more[]" in the Glenville home. On cross-examination, however, A.H. was asked whether petitioner had propositioned her for sex "at least 30, 40 times in Cedarville and Glenville from June of '11 up until July of – July 5th of 2012, is that

fair to say?" A.H. responded: "Approximately 30 times, yeah." Therefore, the evidence offered at trial only supports thirty counts of attempt to commit sexual abuse by a parent and, therefore, petitioner's conviction on the remaining eight counts must be vacated.[18]

Furthermore, after review of all the evidence offered at trial, A.H. never testified to petitioner touching her breasts. Respondent conceded during oral argument before this Court that there was no specific reference to support petitioner touching A.H.'s breasts in the evidence offered at trial. Consequently, petitioner's conviction on count 43 concerning sexual abuse in the first degree and count 44 concerning sexual abuse by a parent are not supported by the evidence and those two counts are therefore vacated.

Consequently, other than the specific ten counts referenced above that are vacated, petitioner stands firmly convicted by a jury of the remaining fifty-three counts with which he was charged.

## IV. Conclusion

For the foregoing reasons, we affirm the circuit court's August 14, 2014, order, in part, and reverse, in part, and remand the case to the circuit court for resentencing of petitioner consistent with this memorandum decision.

Affirmed, in part;
Reversed, in part, and remanded.

**ISSUED:** November 10, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

---

[18]*See supra* notes 8 and 9.

12